In the Matter of the Application of Patrick G. McGarry and Others, Respondents, for a Certiorari Order against William E. Walsh and Others, Constituting the Members of the Board of Appeals, and Another, Appellants.

Second Department, May 22, 1925.

Municipal corporations — zoning ordinances — board of appeals of New York city sustained action of superintendent of buildings in denying permit to erect garage in business district — appeal was taken on ground that to carry out strict letter would, within Building Zone Resolution, art. 5, § 20 (now § 21), result in unnecessary hardship — determination of superintendent of buildings was affirmed — later, after personnel of board of appeals had been changed, board reopened proceedings and granted permit under Building Zone Resolution, art. 5, § 20 (now § 21) — all facts present on reopened proceedings were present on first appeal — board of appeals does not have power under Greater New York charter, § 719, to reopen proceeding and review its own decision — review is by certiorari under Greater New York charter, § 719-a, and Civil Practice Act, § 1283 et seq. — action of board of appeals on reopened proceedings in reversing prior decision and granting permit was illegal.

The board of appeals of New York city does not have the power under section 719 of the Greater New York charter to reopen an appeal which has been decided by it, affirming a decision of the superintendent of buildings of the city of New York, in refusing to grant a permit to erect a garage in a business district, and reverse said former decision and grant the application to erect a garage on the ground that, within section 20 (now section 21) of article 5 of the Building Zone Resolution, it would work unnecessary hardship on the property owner to deny him the right to erect a garage.

The remedy for the review of the action of the board of appeals in refusing to grant a permit is by certiorari under the authority of section 719-a of the Greater New York charter and section 1283 *et seq.* of the Civil Practice Act.

Accordingly, where the application of a property owner to erect a garage in a business district was denied by the superintendent of buildings and on an appeal to the board of appeals, on the ground that the denial of the application would, under section 20 (now section 21) of article 5 of the Building Zone Resolution, work an unnecessary hardship on the petitioner, the action of the superintendent of buildings was affirmed, it was error for the board of appeals, after the personnel of the board had been changed, to reopen the proceedings and, without any additional facts, reverse its former decision.

Appeal by the defendants, William E. Walsh and others, constituting the board of appeals of the city of New York, and another, from a final order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Kings on the 26th day of March, 1925, sustaining an order of certiorari and annulling the decision of the board of appeals which granted

an application to permit in a business district, under the Building Zone Resolution, the erection of a garage for more than five motor vehicles, upon premises Nos. 300–310 Winthrop street, Brooklyn, after it had previously been denied by said board.

*William T. Kennedy* [*George P. Nicholson, Corporation Counsel, and John F. O'Brien* with him on the brief], for the appellants William E. Walsh and others.

*William H. Good* [*Malvin B. Mariash* with him on the brief], for the appellant Surf Construction Co., Inc.

*Alfred Nagelberg,* for the respondents.

MANNING, J.:

The petitioners allege that they are the owners of certain property directly opposite the premises where the proposed garage has been authorized by resolution of the board of appeals, in a business district; and that on or about November 14, 1923, one Harry A. Yarish, an architect, on behalf of the then owner desiring to erect a public garage, made application to the superintendent of buildings for permission to erect and maintain the same. The premises are wholly located within what is known and laid out on the zoning map as a business district use, where under the Building Zone Resolution of 1916, as amended, which has likewise been superseded by the Building Zone Resolution of 1924, as amended, the use contemplated and desired is prohibited. On November 16, 1923, the superintendent of buildings denied the application as contrary to the then existent Building Zone Resolution, article 2, section 4,* whereupon the applicant appealed from said decision of the superintendent of buildings to the board of appeals, setting forth the grounds upon which he based the appeal, and claiming that he would sustain unnecessary hardship in being deprived of the right to erect and maintain the garage, and asking for a modification of the decision " by the power vested in you under Art. 5, Section 20," of the Building Zone Resolution of 1916, as amended. The premises are situated on the southeast corner of Nostrand avenue and Winthrop street, Brooklyn, with a frontage of 102 feet 6 inches on Nostrand avenue, and 92 feet 6 inches on Winthrop street. The grounds of alleged hardship, as stated, are that " owing to the surrounding conditions — garage and large gas holders — property is unfitted for any but garage use and hardship would ensue if not permitted to improve the property as desired."

---

* See Cosby's Code of Ordinances (Anno. 1924), pp. 625, 626; now Building Zone Resolution of 1924, art. 2, § 4; Cosby's Code of Ordinances (Anno. 1925), pp. 639, 640.—[REP.

The Building Zone Resolution, adopted by the board of estimate and apportionment on July 25, 1916, as amended, provides for the zoning of the use districts, throughout the city, and article 2, section 7, provides for certain " use district exceptions," where the board of appeals " may, in appropriate cases, after public notice and hearing, and subject to appropriate conditions and safeguards, determine and vary the application of the use district regulations herein established in harmony with their general purpose and intent," as specified in subdivisions *a* to *g* mentioned therein, which limits the right to vary. (See Cosby's Code of Ordinances [Anno. 1924], pp. 627, 628.) These provisions, since October 3, 1924, are in article 2, section 7, of the Building Zone Resolution of 1924, as amended. (See Cosby's Code of Ordinances [Anno. 1925], p. 642.) The appeal in this case was not made or based upon the power given under this article or its subdivisions, but solely upon the authority conferred upon the board of appeals by virtue of article 5, section 20, of the Building Zone Resolution of 1916, as amended, which provides that " Where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the provisions of this resolution, the Board of Appeals shall have power in a specific case to vary any such provision in harmony with its general purpose and intent, so that the public health, safety and general welfare may be secured and substantial justice done." (See Cosby's Code of Ordinances [Anno. 1924], pp. 636, 637.) These provisions are now in article 5, section 21, of the Building Zone Resolution of 1924, as amended. (See Cosby's Code of Ordinances [Anno. 1925], pp. 651, 652.)

Plans were submitted disclosing the nature of the proposed garage, one story in height, non-fireproof construction, with a frontage of 102 feet 6 inches on Nostrand avenue, and 92 feet 6 inches on Winthrop street. No consents were filed, and there were numerous objections filed by adjoining property owners. A hearing was had before the board of appeals on February 29, 1924, at which the applicant and objectors appeared, and the appeal was *unanimously* denied by the board of appeals by resolution reading in part, that " Whereas, there was opposition  *   *   * on the part of the neighboring property owners and applicant failed to substantiate his application under the provisions of section 20," it is " Resolved, that the decision of the superintendent of buildings be and it hereby is *affirmed,* and the application be and it hereby is *denied.*"

Eight months subsequent to the aforementioned denial, on September 10, 1924, the owner again applied to the board of appeals for permission to reopen the proceedings, basing his request upon

the allegation that, since the denial by the board, a large gas tank had been erected in the rear of the premises. The application was made by letter, setting forth this fact, and the matter came before the board for hearing on October 3, 1924. The personnel of the board had changed since the original application; and upon this hearing to reopen, the chairman of the board stated: " It was formerly turned down by the board under section 20. The applicant states that there is an extensive gas tank to the rear of the premises in question and since the denial of the application by the board another gas tank has been erected."

The above recital of facts is not disputed; and it is not denied, or if it is denied, the denial is not sustained by the record, that upon the original application by Yarish on behalf of the owner, the other gas tank mentioned as a ground for reopening the proceeding, was specifically mentioned as one of the grounds upon which the original application was based, the letter from Yarish to the board in which he appealed from the decision of the superintendent of buildings, dated December 26, 1923, expressly stating " and another one now under construction belonging to the Flatbush Gas Co.; " and it is further sustained by the application and the statements upon the hearing of the original application " and there is another one under construction on 125 feet in back of our lots." This is not subject to contradiction; and the board of appeals in its return to the petition for the order of certiorari, admits that the aforesaid gas tank was in the process of construction at the time of the original application, but it denies that it actually existed; and the record conclusively shows that not only was it the basis of the application and mentioned throughout the hearing, but it was actually considered by the board when the original application was denied.

On October 3, 1924, the proceedings were reopened, the matter set for rehearing November 18, 1924, and many objectors appeared. A vote was finally taken, with four members voting in favor of granting the application to permit the garage, and two opposed, one being absent. The necessary five votes for a decision not being obtained, the matter was put over until December 16, 1924, on which date it was granted by a vote of five to two.

It is not disputed that this application does not come within article 2, section 7, subdivision (e), of the Building Zone Resolution of 1916, as amended (Cosby's Code of Ordinances [Anno. 1924], p. 628), which has been revised by article 2, section 7, subdivision (e), of the Building Zone Resolution of 1924, as amended (Cosby's Code of Ordinances [Anno. 1925], p. 642), concededly there being no stable or garage located in this business district, although there

is a public garage located in an unrestricted district for which no regulations or restrictions are provided in the Building Zone Resolution, which is just outside the area on Winthrop street.   It is undisputed that all of the property upon which the proposed garage is contemplated is in a business district as designated in the Building Zone Resolution, and that the adjoining property owners in this district object, some twenty-seven or more objections being filed; and that there are no consents filed; and it is not denied that the premises owned by petitioners are used in the manner shown on the map annexed to the record, showing brick buildings used as dwellings and stores in this typical business district.

The petitioners maintain, and it clearly appears from the record, that the board of appeals knew of the construction of this gas tank at the time of the original application; and they further maintain that there was no new evidence presented upon the rehearing and upon which the board reversed its previous denial granting the application.

The petitioners, therefore, contend that the action of the board in purporting to reopen and in granting the application was null and void and of no effect, contrary to the powers conferred on the board by law and its own rules of procedure; that on the rehearing on December 16, 1924, they were not given a fair opportunity to be heard; and that the effect of the resolution granting the application and permitting the erection of the garage, would be to change the restrictions imposed by the Building Zone Resolution making a business district an unrestricted district; that such change is not within the spirit and intent authorized by the Building Zone Resolution, and that said resolution did not reasonably regard the character of the buildings erected in such district, the value of the land, and the use to which it might be put, to the end that such changes " as purported   *   *   *   to be authorized would promote public health, safety and as provided by section 20 of said Zoning Resolution," all of which is denied by appellants.

As heretofore stated, the original application to the board of appeals was made and denied under the authority invoked and conferred by article 5, section 20, solely; and the second application was made and granted solely under the authority invoked and conferred by this same section; and both applications were solely considered under this section, although said section 20 had under the Building Zone Resolution of 1924, as amended, become article 5, section 21, and was thus existent when the present application was granted by the board of appeals.   No other section of the Building Zone Resolution was invoked, nor did this case come within section 7, subdivision (e), concededly, nor any other sub-

division of that section; and though the resolution granting the· application does not specifically recite " practical difficulties or unnecessary hardships," in which case a variation is permitted by the board of appeals under section 20 (now section 21), it was in fact the only ground upon which the appeal was based or the board authorized to grant the application in this case, assuming that its power to vary under that section also permits it to dispense entirely with the express provisions of section 4 of the same Building Zone Resolution prohibiting such a use, and to dispense entirely with section 7 and its subdivisions, which permits the right to vary upon certain specified conditions being shown.

The grounds stated in the resolution of the board do not state " practical difficulties or unnecessary hardships," but that it " would be a reasonable adjustment of the Building Zone Resolution, granting practical and reasonable use and development of the property under appeal." It is not shown that the property cannot be reasonably used. for the purpose for which this district is laid out as a " business district " for business purposes as the surrounding property is used.

The main point upon which the decision of the court below was based, as I view it, was that the board had no power to reopen the proceeding and review its own determination once made denying the application and then upon the rehearing grant the same, and that, if it had the power, no changed conditions were shown upon the second application.

It conclusively appears from the record that the action of the board upon the original application and upon the second application was based upon the same set of circumstances, and no new conditions or evidence was disclosed upon the second application which was not shown on the original application and upon which the denial was made. The only denial of this contention by appellants is that the new gas tank, shown on the original application to be in the course of construction, was not actually erected. This was before the board, however, and the statement of the chairman as a reason for reopening, that " The time it was up before, there was no apparent effort made to establish hardship," is not sustained, as this was the very ground upon which the original application was made and considered by the board when it originally unanimously affirmed the action of the superintendent of buildings denying the application, which action it subsequently reversed when it granted the application.

The appellants and the intervenor maintain that the board of appeals had the power to reopen and reconsider its previous ruling refusing to vary the Use District Regulations; that it acted legally

in so doing, and that its decision herein should not be interfered with unless palpably erroneous as a matter of law or a clear abuse of discretion. The substance of the argument is that the board was not acting in a *quasi* judicial or judicial capacity or as an appellate tribunal and, therefore, being of special limited jurisdiction, could not reconsider a decision once made, but that while the board of appeals, as its name implies, does in certain cases act as an appellate tribunal, such was not its function in this case, but that its function here was purely administrative; and that its power to vary the provisions of the rules and regulations merely means that in a particular case the regulations may be suspended or administered in an exceptional manner instead of an ordinary manner; and that by its action in first denying the application and then reopening the case and holding further hearings and coming to a decision to permit the variation from the regulations, as a matter of law the board was acting in its administrative capacity.

The respondents maintain that the board of appeals has no legal right to reopen a cause and review its own decision; that it is a *quasi* judicial body, and that its decision in this case was clearly judicial and not administrative, as claimed; that the case at bar does not come within any of the exceptions specified in article 2, section 7, of the Building Zone Resolution, and that the board has attempted to take unto itself the authority to vary the Building Zone Resolution merely by virtue of section 20 (now section 21), which power if it exists — and this, respondents deny — is clearly judicial or *quasi* judicial and not administrative or ministerial.

The powers of the board of appeals are conferred by the Greater New York charter provisions, sections 242-a, 242-b, 718-d, 718-e, 719, 719-a and 719-b, added by chapter 470 of the Laws of 1914 and by chapter 503 of the Laws of 1916, as amended by chapter 497 of the Laws of 1916 and chapter 601 of the Laws of 1917, and since amended by chapter 295 of the Laws of 1924.*

The Greater New York charter (Laws of 1901, chap. 466, §§ 242-a, 242-b, added by Laws of 1914, chap. 470, as amd. by Laws of 1916, chap. 497, and Laws of 1917, chap. 601; since amd. by Laws of 1924, chap. 295), conferring power upon the board of estimate and apportionment to regulate and restrict buildings, and the location of trades and industries, and for dividing the city into districts and providing for regulations, under which authority the Building Zone Resolution was adopted, provides that " Said regulations of the board of estimate and apportionment may provide that

---

* Sections 718-d *et seq.* were amended on June 19, 1925, by New York Local Laws of 1925, No. 13, but under section 10 thereof this proceeding is not affected. (See, also, *Browne* v. *City of New York*, 125 Misc. 1; revd., 213 App. Div. 206.) — [REP.

the board of appeals may determine and vary their application in harmony with their general purpose and intent and in accordance with general or specific rules therein contained."

Section 718-d of said charter (added by Laws of 1916, chap. 503, as amd. by Laws of 1917, chap. 601) provides for a board of appeals:

" Board of Appeals. § 718-d. The appointed members of the board of standards and appeals and the chief of the uniformed force of the fire department, exclusive of the other members, shall hear and decide appeals from and review any rule, regulation, amendment or repeal thereof, order, requirement, decision or determination of a superintendent of buildings  \* \* \*. They shall also hear and decide all matters referred to them or upon which they are required to pass under any resolution of the board of estimate and apportionment adopted pursuant to sections two hundred and forty-two-a and two hundred and forty-two-b of this chapter."

Section 719 of the charter (as added by Laws of 1916, chap. 503), entitled " Appeals," provides:

" § 719. 1. What appealable. An appeal may be taken to the board of appeals from any order, requirement, decision or determination made by any superintendent of buildings  \* \* \*.

" 2. Who may appeal.  \* \* \*.

" 3. Appeal how taken.  \* \* \*.

" 4. Stay.  \* \* \*.

" 5. Hearing of and decision upon appeal. The board of appeals shall fix a reasonable time for the hearing of the appeal and give due notice thereof to the parties, and decide the same within a reasonable time. Upon the hearing, any party may appear in person or by agent or by attorney. The board of appeals may reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination appealed from and shall make such order, requirement, decision or determination as in its opinion ought to be made in the premises, and to that end shall have all the powers of the officer from whom the appeal is taken. Where there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter of the law, the board of appeals shall have power in passing upon appeals, to vary or modify any rule or regulation or the provisions of any existing law or ordinance relating to the construction, structural changes in, equipment, alteration or removal of buildings or structures, or vaults and sidewalks appurtenant thereto, so that the spirit of the law shall be observed, public safety secured and substantial justice done.  \* \* \*."

As I read the above section of the charter, the board of appeals has power to hear and decide appeals from any order or requirement

or decision of the superintendent of buildings, and may reverse, affirm or modify the order, requirement or decision of the superintendent appealed from. Under the latter part of the section it also has power where there are practical difficulties and unnecessary hardships " to vary " the strict letter of the law relating to construction and structural changes, etc., only. There is no power given therein to vary or modify or change any *use* contained in the Building Zone Resolution.

Section 719, subdivision 6, of the Greater New York charter (as added by Laws of 1916 chap. 503) reads as follows:

" 6. Review by board of appeals on its own motion. Any rule, regulation, amendment or repeal thereof and any order, requirement, decision or determination from which an appeal may be *taken to the board of appeals* under the provision of this section, may be reviewed by the board of appeals, upon motion of any member thereof, but no such review of a decision upon an appeal shall prejudice the rights of any person who has in good faith acted thereon before it is reversed or modified. The provisions of this chapter relating to appeals to the board of appeals shall be applicable to such review."

The appellants maintain that under this section the board of appeals has the power to consider any case of its own free will, whether an appeal has been taken or not, and also has the power to reopen a case previously decided; that this section was intended to clothe the board with continuing power and right to change its decisions whether in substance or detail; and that the court below erred in deciding that said board had no power to reconsider the matter, even though its own rules of procedure, provide for a final determination (Board of Standards & Appeals Rules of Procedure, art. 4, § 2), since no rule or regulation can be interpreted as a curtailment of power lodged in the board by the Legislature and the board of estimate and apportionment through legislative authority.

As I interpret the section, a review may be had by appeal from a decision or determination of the superintendent of buildings, upon motion of any member of the board of appeals, but I do not believe it confers the power on the board of appeals to review of its own free will an appeal once heard and determined by the board itself in what appears to me a *quasi* judicial manner and not in an administrative manner as asserted, where the charter provides certiorari for such purpose. As I view it, this was not a review by the board, but an appeal from a decision made by the superintendent of buildings, which is provided for in section 719 of the charter, where an appeal may be taken to the board from a " decision or determination " of the superintendent of buildings, and subdivision

1 of that section, describing what is appealable, does not include an appeal from the decision of the board of appeals itself; and instead of giving the right to review its own decision, the charter in the very next section (719-a) provides for a review by certiorari in the Supreme Court. (See, also, Civ. Prac. Act, § 1283 *et seq.*) I cannot see of what efficacy section 719-a of the Greater New York charter (as added by Laws of 1916, chap. 503) would be, if it were not intended that there should be finality by decision of the board of appeals, and the board on the theory of a new application or rehearing could review its own determination once made, where the charter expressly provides for a review of its action by certiorari. That such is not the understanding of the board itself is borne out by the rules of procedure adopted by the board of standards and appeals to guide the board of appeals, which rules by article 4, section 6, provide:

" 6. No request to grant a rehearing *can be entertained* unless new evidence is submitted which could not be presented at the previous hearing.   *   *   * "

I can find no new evidence presented or considered on the rehearing which was not presented and considered upon the original application or appeal; and section 5 of article 4 of the rules does not alter the situation, since this should be read in conjunction with section 6, and the construction contended for would make section 6 of no effect whatsoever.

Mr. Justice CALLAGHAN based his decision in this case upon the case of *People ex rel. Swedish Hospital* v. *Leo* (120 Misc. 355), in which he said: " The Zoning Resolution, having been passed by the sanction of the Legislature, has the force of a statute, but nothing therein contained gives the board power to reopen and review its acts, after it had once determined and terminated the proceeding. Its jurisdiction is, therefore, limited to hearing and determining appeals.   *   *   *   The board of appeals can in no sense act other than in a *quasi* judicial capacity. It does not perform a single administrative or legislative act. As its name implies it is an appellate tribunal. It passes upon matters formally brought to its attention much the same as courts.   *   *   * If such board were vested with the power of review, the members would always be subject to such charges as are made here, namely, of improper influences which are not disclosed by the record."

And he further said that if this were not so, a change of opinion on the part of the majority of the board, whether based upon sentiment or on good or on improper reasons, would suffice to warrant the opening of any proceeding finally determined by the board; and the court in commenting upon the decision in *People*

*ex rel. Brennan* v. *Walsh* (195 N. Y. Supp. 264), cited by appellants on this appeal as authority for their contention here, said: " a contrary view was expressed but pride of opinion does not compel an adherence to a decision which incorrectly states the law." This was his own decision. A reading of the *Brennan* case, however, convinces me that it does not go so far as to sustain the power of the board of appeals to review its own determination once it has been made. There are many limitations and restrictions mentioned in the opinion, such as " correcting matters which were overlooked and were of slight materiality, but which were capable of speedy and practical correction; " and the case further held that the power so to act was not an arbitrary one, but should only be granted where there was justification for it. The power to correct a matter overlooked, where the board would act in a ministerial or administrative manner, is quite different, as I view it, from a determination by the board acting in a *quasi* judicial manner. In any event this authority has been rejected by the justice writing the opinion, and hence is of little value as an authority for appellants.

The appellants maintain that the board had the power to correct, reverse or amend its previous decision, and that it was proper in this case, since the owner would have suffered a grave injustice if its action had been permitted to stand; and that if the board has not such power and " finality in Zone Law matters were the policy of the law, the board of appeals would cease to exist; " and that the very essence of the statutes and ordinances is to *authorize variations*, make changes, and then further changes, in the applications of the fixed rules; and that the reason for its very existence is to the direct contrary of the legal policy that judgments of courts between private litigants once legally made, must forever stand.

If this is so, the board of appeals is a law unto itself, and I do not know when it could be considered that any action of the board is final, and yet its rules provide for a final determination which the board says cannot curtail powers given by the Legislature.

As I view the authorities cited in the decision of *People ex rel. Swedish Hospital* v. *Leo* (*supra*), the board of appeals, acting as a *quasi* judicial body, is without power to reopen and rehear a proceeding which has once been determined by it. In any event, in my opinion, it acted as a *quasi* judicial body in this case, there having been no new evidence submitted which warranted a rehearing .being entertained, under the rules of procedure governing said board, which rules further provide for a final determination (Art. 4, § 2-a): " The final disposition of any application or appeal before the board of appeals shall be in the form of a resolution either reversing or modifying the order, requirement, decision or deter-

mination appealed from and granting the application or appeal, or affirming the order and denying the application or appeal." The board made a resolution in accordance with this rule, and in so doing it did not perform an administrative function, but acted as an appellate tribunal in a *quasi judicial* manner. There was no error or mistake in a prior proceeding under review, but a hearing upon the same evidence and circumstances, which amounted to a review of its own determination, and I do not believe the cases cited by the appellants sustain the contention that it acted in an administrative manner within the power conferred by statute.

Upon the facts disclosed by the record here, I reach the conclusion that the board of appeals had no right to reopen this case and reverse their former decision. No new facts were disclosed; it simply was a reversal of the prior decision without any reason or justification. This should not be permitted. A decision once made should only be reviewed, as the law provides, by certiorari.

The order appealed from should, therefore, be affirmed, with costs.

Present — KELLY, P. J., JAYCOX, MANNING, KELBY and KAPPER, JJ.

Final order unanimously affirmed, with costs.