ANGIE L. BURR ET ALS. *vs.* NICHOLAS F. RAGO ET ALS.

MALTBIE, C. J., HAINES, HINMAN, AVERY and FOSTER, Js.

Argued May 10th—decided June 27th, 1935.

*John A. Markham,* for the appellants (plaintiffs).

*Joseph P. Cooney,* with whom were *John H. Yeomans, Francis A. Pallotti* and, on the brief, *Thomas J. Spellacy,* for the appellee (defendant Socony-Vacuum Oil Co., Inc.).

*Franz J. Carlson,* with whom, on the brief, was *Barclay Robinson,* appeared for the appellees (defendants Rago *et als.*)

HAINES, J. This appeal is taken by the named plaintiff and thirty-five others, all of whom on September 4th, 1934, owned property adjacent to or in the vicinity of the northwest corner of Marshall Street and Farmington Avenue in the city of Hartford known as No. 300 Farmington Avenue. This plot was owned by the estate of Emma S. D. Parker deceased, and is located in "Business Zone No. 1" as set forth in the zoning ordinances of Hartford. Such material facts as are referred to in the following discussion are from the finding with such additions from the draft-finding as we deem warranted by the evidence before us.

On January 13th, 1931, the zoning board of appeals held a hearing on the application of the Standard Oil Company of New York for a permit to use this tract for the erection of a motor vehicle service and gasoline filling station, and denied the application. On January 9th, 1934, the board held a meeting on a second application by the Standard Oil Company for a permit to use the same tract for the same purpose, and on January 23d, 1934, the board again denied the application. On September 4th, 1934, the board for the

third time heard an application for a like permit then made in the name of the Socony Vacuum Oil Company of New York, and on September 18th, 1934, the board by a vote of four to one granted the permit. Many of the present appellants appeared at the first and second hearings, and at the last and third hearing all the present appellants and thirty-one other persons, or sixty-seven in all, objected to the granting of the application, while only the representatives of the Parker estate and one other person appeared for the applicants, both sides being represented by counsel.

From its eastern end near Broad Street to the city line at Prospect Avenue, Farmington Avenue is about eighty-two hundred feet, or more than one and a half miles long. It is a main artery for traffic on the west side of the city and between Laurel and Forest Streets is about forty feet wide. There is a slight curve in the avenue opposite the end of Forest Street. Marshall Street at the corner of Farmington Avenue is about twenty-six feet wide. Marshall Street, Gillette Street and Forest Street are all very high class residential streets. Most of the property along the avenue is in either a "Business No. 1" or "Business No. 2" zone and the remainder is in "C Residence" zone. All of Marshall Street north of the corner of Farmington Avenue is zoned as "Class A Residence." No. 300 Farmington Avenue is visible from portions of Forest Street, Gillette Street and Marshall Street.

The relevant provisions as to a "Business No. 1" zone are contained in Section III of the zoning ordinances. Subject to the provisions in Section VII which relate to "Non-conforming buildings and uses," Section III provides that "no building or premises shall be used and no building shall be erected or altered which is arranged, intended or designed to be used for any of the following specified trades, indus-

tries or uses: . . . 15. Motor vehicle service station, except as permitted in Section XV", which provides: "The board of appeals may in a specific case, after public notice and hearing, and subject to appropriate conditions and safeguards, determine and vary the application of the regulations herein established, in harmony with their general purposes and intent as follows: . . . 7. Permit in a business zone, subject to the prohibition of Section VI [not relevant to the present inquiry], the construction . . . of a building intended for the storage or repair of motor vehicles or for a motor vehicle service or gas filling station."

The board of appeals in granting the permit of September 18th, 1934, treated the foregoing provisions as its authority for doing so, and held that its action in so varying the zoning regulations was "in harmony with the general purposes and intent" of the regulations. These purposes and intent are set forth in Section 1 of the zoning ordinances: "For the purpose of promoting the health, safety, morals, and general welfare of the community; for the purpose of lessening congestion in the streets; for the purpose of securing safety from fire, panic, and other dangers; for the purpose of providing adequate light and air; for the purpose of preventing the overcrowding of land and avoiding undue concentration of population; for the purpose of facilitating adequate provision of transportation, water, sewerage, schools, parks, and other public requirements; for the purpose of conserving the value of buildings and encouraging the most appropriate use of land throughout the city; for the purpose of providing for the public health, comfort, and general welfare in living and working conditions; and for the purpose of regulating and restricting the location of trades and industries and the location of buildings designed for specified uses."

It is to be noted that the granting of this permit was not the result of a first impression. It was done only after two earlier hearings, one in January, 1931, and one in January, 1934, following each of which the permit was refused.

The present appeal calls in question the power of the board to hear and determine successive applications affecting the same premises and seeking permits for the same purposes, the appellants contending (1) that the action of the board was "arbitrary, unreasonable, illogical and illegal" for the reason that there had been no material change of conditions since the hearing about eight months before, and (2) that locating a motor vehicle service and gasoline filling station at No. 300 Farmington Avenue is not in harmony with the purposes of the zoning regulations or the most appropriate use of the tract in question.

We have recently had occasion to state the considerations upon which a zoning board of appeals may justify a reversal of its prior rulings. We recognized the remedial and beneficial character of the general provisions authorizing the board to vary the strict letter of zoning regulations in a proper case if consistently upholding the general spirit and purposes of the act, and we cited Baker, Legal Aspects of Zoning, page 106: "It has preserved the constitutionality and popularity of the zoning ordinance, and, more than that, it has made the law capable of being enforced." Moreover, we accorded to the board in such cases the benefit of a presumption that they acted with fair and proper motives, skill and sound judgment, and that they were invested with a liberal discretion. *St. Patrick's Church Corporation* v. *Daniels,* 113 Conn. 132, 139, 154 Atl. 343; citing *Silvester* v. *Princeton,* 104 N. J. L. 18, 139 Atl. 518; *Buffalo* v. *Hill,* 79 N. Y. App. Div. 402, 79 N. Y. Sup. 449; *Chicago & N. W. Ry. Co.* v. *Rail-*

*road & Warehouse Commission,* 280 Fed. 387, 395; Metzenbaum, Law of Zoning, p. 265.

A zoning board of appeals acts in a quasi-judicial capacity. It is an appellate tribunal and its decisions are reached only after the presentation of evidence deemed to warrant such action. *People ex rel. Swedish Hospital* v. *Leo,* 198 N. Y. Sup. 397; *McGarry* v. *Walsh,* 210 N. Y. Sup. 286, 213 App. Div. 289. The power to reconsider "should not be interpreted with too much refinement, nor should it be hedged about with technicalities." Metzenbaum, supra, p. 264. Nevertheless "the power to reconsider is not an arbitrary one, and its exercise should be granted only when there is justification and good cause." *People ex rel. Brennan* v. *Walsh,* 195 N. Y. Sup. 264, 266. Thus while the board is invested with a liberal discretion to decide whether to reverse a former decision, it is a discretion which is subject to review in the courts and it must be reasonably and legally exercised, and based upon evidence which fairly sustains the decision. It "should not ordinarily be permitted to review its own decisions and revoke action once duly taken. Otherwise there would be no finality to the proceeding [and] the result would be subject to change at the whim of members or due to the effect of influence exerted upon them, or other undesirable elements tending to uncertainty and impermanence." *St. Patrick's Church Corporation* v. *Daniels,* supra, p. 137; Baker, Legal Aspects of Zoning, p. 92.

After twice refusing to permit the erection of a service and gas station on this particular corner, the board was asked upon a third hearing, in effect, to reverse its former decisions. In so reversing them it was apparently the view of the board and of the trial court also, that material changes in any part of Farmington Avenue throughout the more than a mile and

a half of its length, were relevant circumstances in this inquiry, sufficient in the aggregate to justify a reversal of the former rulings of the board. The court has been at pains to include in the finding a complete list of all the properties and their uses on both sides of the avenue from its east to its western junction with Prospect Avenue.

This view gives too broad a scope to the question of material changes. It would be unlikely that changing business conditions at the extreme end of an avenue which is five miles long for example, would have a material bearing upon the character of a residential section at the other end of the avenue. The materiality of changes may be said in general to increase or decrease in proportion to the distance from the locality in question. To make such changes material, they should generally be confined to a much narrower range and be of such character as to show "that the condition of property in the immediate vicinity had been changed in a manner militating against the objections formerly interposed." *St. Patrick's Church Corporation* v. *Daniels,* supra, p. 138; *Ficaro* v. *Walsh,* 235 N. Y. Sup. 254; *Riker* v. *Board of Standard and Appeals,* 234 N. Y. Sup. 42; *McGarry* v. *Walsh,* 210 N. Y. Sup. 286.

In the *Ficaro* case, at page 257, it was said: "Where new facts appear, such as the condition of the property in the immediate vicinity having been changed by the consent of the former objecting owners, we think it is proper for the board to reconsider its determination." In another case, *Matter of Application of Rutland Parkway, Inc.* v. *Murdock,* 270 N. Y. Sup. 971, it was said: "Here new conditions have arisen, due to changes in the neighborhood and the use of adjacent property, so that the application is in effect based on a new state of facts instead of constituting a reopening of a mat-

ter once decided." Thus the important inquiry in the present case relates to material changes in the "immediate vicinity" or "in the neighborhood" of No. 300 Farmington Avenue. If such material changes have taken place in this area that the inquiry of September 4th, 1934, had relation to an essentially different state of facts from that of the preceding January, justification might conceivably be found for the reversal of the former rulings of the board. If such a different state of facts did not exist, the September inquiry was simply a third consideration of the same question.

The finding lists five certain changes which had taken place "on Farmington Avenue" between the January and the September hearings, and these must be held to be the basis upon which the court upheld the action of the board, and they are the only material changes which it found proven which might justify the action of the board. They are stated as follows: "(a) The practical elimination of trolley cars on Farmington Avenue; (b) the erection and completion of a motor vehicle service and gasoline filling station at the corner of Farmington and Girard Avenues; (c) a diner and dance hall combination have been erected and constructed near the corner of Farmington Avenue and Girard Avenues; (d) an open-air used-car place has been established at No. 96 Farmington Avenue where second-hand cars are parked and offered for sale, and (e) a tavern at No. 466 Farmington Avenue, where intoxicating liquors are sold, was enlarged."

The finding discloses that the elimination of trolley cars from the avenue was not complete since for most of the week they were operated four hours per day. We deem it a fair question whether a change from trolley transportation to a combined bus and trolley transportation is a detriment or an advantage to a residential section of a city street. It is difficult in

any event to understand how it could so far affect the character of this particular neighborhood as to make this corner a more suitable location for a service and gas station than it was when trolleys alone were in use. The second change listed is that a service and gas station was erected at the corner of Farmington and Girard Avenues, and third, a diner and dancing place near the same corner. These are about twenty-eight hundred feet or more than half a mile from the corner in question. The used-car place listed as the fourth change, is shown to be twenty-six hundred feet or about a half mile away. The fifth change is the enlarging of a tavern at No. 466 Farmington Avenue. It is not shown in the finding how or to what extent it was thus enlarged, but it does appear that this tavern is about two thousand feet or nearly two-fifths of a mile from the corner of Marshall Street. It further appears that none of these four locations are in fact visible from No. 300 Farmington Avenue.

Whatever change may have been wrought in the general character of Farmington Avenue as such, by these changes, it cannot be fairly claimed that the residential neighborhood in the vicinity of the Marshall Street corner had been thereby affected in any material respect. The finding itself shows that during the eight months which elapsed between the second and third hearings, there were no physical changes in property on Marshall Street, none on Farmington Avenue in the vicinity of Marshall Street, and no material change in the physical aspect of that neighborhood or in the character of the business done there; and all the properties in the neighborhood were devoted to substantially the same uses in September as in the previous January. The finding also states that there was no evidence of any increased demand for a filling station in this location. The latter fact is im-

portant if at all as showing an unchanged condition. It is not necessary to show public convenience and necessity as a basis for a permit to erect a service and gas filling station. *Perdue* v. *Zoning Board of Appeals,* 118 Conn. 174, 179, 171 Atl. 26.

We are unable, for the reasons stated, to find adequate sanction in the facts presented by this record, for the reversal by the board of its earlier decisions. Such action was erroneously sustained in the Superior Court.

There is error; the judgment is set aside and the cause is remanded to the Superior Court with direction to sustain the appeal and enter a judgment accordingly.

In this opinion the other judges concurred, except Avery, J., who dissented.