J. WESLEY ROMMELL ET ALS. *v.* PHILIP J. WALSH ET ALS.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, Js.

Argued October 9—decided November 6, 1940.

*John M. Bailey,* for the appellants (defendants Barry et al.), with whom was *Harold Borden,* and, on

the brief, *Vincent W. Dennis,* for the appellants (defendants Philip J. Walsh et al.).

*W. Arthur Countryman, Jr., John P. Harbison* and *Joseph P. Cooney,* for the appellees (plaintiffs).

JENNINGS, J.   This case concerns the power of a zoning board of appeals to reverse a decision made with respect to the same property on a former application.

On February 9, 1926, the city of Hartford adopted a zoning ordinance pursuant to legislative authority.   Its general purpose is discussed in *St. Patrick's Church Corp.* v. *Daniels,* 113 Conn. 132, 154 Atl. 343, and *Thayer* v. *Board of Appeals,* 114 Conn. 15, 157 Atl. 273.   It provides for a zoning board of appeals of five members, all defendants in the present action.   Section 213, Zoning Ordinance of Hartford, Revision of 1931, reads as follows:

"The Board of Appeals may in a specific case, after public notice and hearing, and subject to appropriate conditions and safeguards, determine and vary the application of the regulations herein established in harmony with their general purposes and intent as follows:

"(*a*) . . .

"(*b*) Where a zone boundary line divides a lot in a single ownership at the time of the passage of this ordinance, permit a use authorized on either portion of such lot to extend to the entire lot, but not more than twenty-five feet beyond the boundary line of the zone in which such use is authorized."

The defendants Barry own and occupy property within the description of (*b*) just quoted.   On June 12, 1934, they made application to the zoning board of appeals for variation of the ordinance by extending a

"Business No. 1" zone, within which a portion of their property was located, so that twenty-five feet more would be included, in accordance with the authority granted under (b). The board considered this application at an extended hearing where some appeared in favor of the change and many were opposed. The application was denied. On June 2, 1938, an application was filed identical with the former application except that after copying it two inconsequential changes were made in pencil. The changes weakened rather than strengthened the allegations. After a hearing on this new application, opposed and favored as before, it was granted and the plaintiffs appealed. All of the facts recited above were matters of record.

While the finding is attacked, the evidence not only supports it but the basic facts appear to be substantially undisputed. The Barrys own and occupy a residence on the westerly side of Sigourney Street. The frontage is 49.7 feet of which the southerly 34.7 feet is in a "Residence C" zone and the northerly fifteen feet is part of an area one hundred feet square at the southwest corner of Sigourney and Ashley Streets zoned "Business No. 1." The next two properties to the north are in this business zone but most of the large section surrounding the properties in question is zoned as "Residence C."

The so-called Hayes building, situated between the Barry property and a drug store on the corner, was constructed in 1926. It was planned for four stores on the ground floor with high class residential apartments on the two floors above. At the time of the 1934 hearing a grocery occupied the two northerly stores which ran through from the front to the rear of the building. South of these was the entrance to the apartments. On the southeast corner was a barber shop with a rear room and on the southwest corner an office occupied

by Mr. Hayes. Between the two hearings, the following changes were made in the layout of the ground floor. In 1935, because of a change in the liquor law, a separate store for the liquor department was built in the northeast corner of the grocery store. In 1937 this was moved to the store occupied by the barber shop, the barber shop moved to the rear room in the middle of the south front and a beauty shop took the place of Mr. Hayes' office. A new window was built in the south wall to light the barber shop. The floor space and number of tenants remained the same. The only substantial change was in the substitution of the beauty shop for the office.

There is a sidewalk in an alley between the Hayes and Barry properties. It was and is used to reach the rear and cellar entrances of the tenements and stores as well as the doors in the south wall of the building giving access to the barber and beauty shops. Three electric signs were added at the southeast corner of this building, next to the Barry property, after the changes. The liquor store maintained one in the window, the beauty shop installed a small neon sign at right angles to Sigourney Street and an illuminated whirling sign of the barber shop was changed to a small electric sign parallel to Sigourney Street. These signs are customarily illuminated only when the stores are open for business and the closing hours are fairly early. Other small changes occurring in the neighborhood between the two hearings included the changing of a one to a two family house, one residence was changed to a rooming house and a dressmaker retired from business downtown and kept a few dresses for sale in her home. All of these changes were permitted in a "Residence C" zone.

The court further found that such inconvenience as was suffered by the Barrys between 1934 and 1938 as

a result of the proximity of business was similar in character and extent to that suffered prior to 1934, that the full depreciation of their property occurred when the business zone was established and the block built, that while traffic increased, the increase was no greater than in Hartford as a whole and that the fifteen feet owned by the Barrys in the business zone can be devoted to practical business use. It also found that the granting of the application would depreciate the property of the named plaintiff and others similarly situated.

On these facts the trial court concluded that the reversal of its decision by the board of appeals was arbitrary, unreasonable, illegal and an abuse of its discretion because no material changes in conditions occurred between the two hearings. The determinative question on this appeal is, does the finding support this conclusion?

The power of a zoning board of appeals to reverse its own decision has been frequently before the courts. It was considered in two leading Connecticut cases where many decisions from other states were analyzed. *St. Patrick's Church Corp.* v. *Daniels*, supra; *Burr* v. *Rago*, 120 Conn. 287, 180 Atl. 444. To the cases there cited may be added *Zoning Board of Appeals* v. *McKinney*, 174 Md. 551, 199 Atl. 540; Smith, Zoning Law & Practice, § 111. The question sometimes arises as a result of the reversal of a decision once enunciated and sometimes as a result of a different decision on successive applications pertaining to the same premises and seeking the same privileges in respect thereto. The two Connecticut cases cited and the instant case all fall in the latter category. The principles involved in the two situations are similar and render decisions under both states of fact pertinent and instructive. The rule is stated in the *Burr* case (p. 292) as follows:

" . . . while the board is invested with a liberal discretion to decide whether to reverse a former decision, it is a discretion which is subject to review in the courts and it must be reasonably and legally exercised, and based upon evidence which fairly sustains the decision. It 'should not ordinarily be permitted to review its own decisions and revoke action once duly taken. Otherwise there would be no finality to the proceeding [and] the result would be subject to change at the whim of members or due to the effect of influence exerted upon them, or other undesirable elements tending to uncertainty and impermanence.' *St. Patrick's Church Corp.* v. *Daniels,* supra, 137." If we add to this from the *St. Patrick's Church* case (p. 138) the qualification that " . . . the test to be applied is whether new or additional facts appear showing a change of conditions or other considerations materially affecting the merits, intervening since the former decision" we have the complete rule applicable to the present situation. As is usual, there is no dispute about the rule but only as to its application. As noted in the finding, certain changes occurred. The question therefore is narrowed to the inquiry whether on the facts the court was justified in concluding that they were not material.

In the *St. Patrick's Church* case, the changes involved the congestion of streets, the promotion of safety and the public welfare and for that reason they were held to be material. This is a very different consideration from the increased inconvenience or even financial detriment to a single individual. *Thayer* v. *Board of Appeals,* supra, 22; *Strain* v. *Mims,* 123 Conn. 275, 286, 193 Atl. 754. Even this was not proved. The court found that neither the inconvenience nor financial detriment of the defendants had increased between the two hearings and this finding is

supported by the evidence. The fact that four years elapsed between the two hearings, standing alone, is irrelevant to the issue of changed conditions.

In arguing orally that the denial of their petition places them in a "Residence C" zone for all time, the defendants lose sight of the two distinct remedies which the zoning act provides. That invoked by them, a variance by the board of appeals, is to be sparingly used. *Thayer* v. *Board of Appeals,* supra, 23. Should general conditions change so as to require a fundamental revision of the zoning ordinance, the court of common council has full authority. Special Laws, 1925, p. 987; 1927, p. 238. The distinction is pointed out by Justice Cardozo in *People ex rel. Fordham M. R. Church* v. *Walsh,* 244 N. Y. 280, 289, 155 N. E. 575: "The power to change the map is reserved by the charter to the Board of Estimate and Apportionment. The power of the Board of Appeals is confined to variations in special cases to meet some unusual emergency, some unnecessary hardship." The 1938 application for a variance reads, in part, "On the north side of the applicants' property there adjoins an apartment house with a grocery store and barber shop & Package Store and on the next piece north there is a drug store. Sigourney Street is fast becoming a business section being a thoroughfare from Albany Avenue to Capitol Avenue and contains from Heavy industrial zones to residence 'B.' " If the plaintiffs were able to prove the last allegation, there would be ground for an application to the common council for a change in the map. The only practical effect of granting the present application would be to transfer the depreciation already suffered by the Barrys to the property of the named plaintiff.

In addition to arguing the materiality of the changes, the defendants emphasize the repeated asser-

tion of this court that the board of appeals is vested with a wide discretion which will be interfered with only when it has been abused. *Blake* v. *Board of Appeals,* 117 Conn. 527, 532, 169 Atl. 195. There is no intention or desire to modify this rule but we hold that the finding in this case fails to support the defendants' claim that such changes as occurred were of sufficient materiality to justify the action of the board. The defendants also base one assignment of error upon a statement in the trial court's memorandum of decision that "it would not seem" that changes in a business zone should be considered in determining the propriety of the making of changes in a residential zone. As the finding of the trial court that there were no substantial changes in the business zone stands, there is no need to consider this matter.

There is no error.

In this opinion the other judges concurred.