[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action, plaintiff, Ellen R. Levada ("Plaintiff"), appeals a decision of the Cheshire Planning and Zoning Commission ("Commission"). She had filed an application to resubdivide her property, by adding a portion of a parcel purchased in 1986 to the rear of her old front lot and creating a new building lot (the rear lot) out of the remainder of the parcel. Her application was denied based (1) on section 5.5 of the Town of Cheshire Subdivision and Other Land Use Regulations,[1] concerning rear lots; and (2) on concern that approval of the resubdivision rear lot, which had been split off a Mountain Road lot, would result in the creation of a nonconforming lot on Mountain Road, if the Commission did not have adequate assurances and information. (Return of Record [ROR], Items 11 and 12.) The appeal of the Commission's decision is brought to this court under General Statutes 8-8.
The subject property, which plaintiff owns, is known as Lot #80, Nutmeg Place, Cheshire, Connecticut. (ROR, Item 1a.) The rear lot has two rights of way appurtenant to it. The first provides access to a street in a cluster subdivision known as CT Page 9948 Nutmeg Place. The other accesses a public highway in Cheshire known as Mountain Road. Id.
On September 18, 1990, the plaintiff filed an application to resubdivide her property into the two lots described above, "in order to create a building lot." ("1990 Application"). (ROR, Item 17m and 17n.) The 1990 Application showed only one of the two rights of way from the rear lot. It showed the right of way to Nutmeg Place, but not to Mountain Road. (ROR, Item 17Q.) The Commission reviewed that application, held a public hearing, and granted the application on October 22, 1990. (ROR, Item 17m.) The plaintiff recorded the approved resubdivision map on the Cheshire land records in accordance with Conn. Gen. Stat. 8-25
and the Cheshire subdivision regulations. Approximately seven months later after the plaintiff had sold the front lot with the added land and was closing the sale of the rear lot, she learned the rear lot contained wetlands. (ROR, Item 4, p. 1-2) Having failed to obtain approval from the Cheshire Inland Wetlands Commission of the resubdivision plan prior to submitting the 1990 Application, the plaintiff chose to obtain such wetlands approval and the Commission did approve this application on September 3, 1991, finding no "significant adverse effect" upon the adjacent wetlands and watercourses. (ROR, Item 17a) The plaintiff then resubmitted a new resubdivision application on September 16, 1991 ("1991 Application") in order to avoid any possible problems. (ROR, Item 1a, 4 and 9)
The 1991 Application was identical to the 1990 Application save for the fact that the 1991 Application indicated the presence of wetlands, and indicated the existence of the right of way running to Mountain Road as required by Section 4.4.1 of the Cheshire Subdivision Regulations.[2] The 1991 Application still showed that the intended accessway to the rear lot would be through the Nutmeg Place right of way. At the hearings on the 1991 Application, the Commission raised several questions regarding the feasibility of accessing the rear lot through the right of way leading to Mountain Road. Id. Furthermore, residents of Nutmeg Place were present to object to the 1991 Application and claimed that approval might create a nonconforming lot on adjacent property. Id.
On November 25, 1991, the Commission denied the 1991 Application. It stated its reasons and following declaration as follows:
CT Page 9949 1. Based upon the information in the record, it appears that the proposed rear lot has two means of access to two town roads: Nutmeg Place and Mountain Road. In order to comply with the requirements of 5.5.A.1 of the Subdivision Regulations, the Commission needs more information concerning the possible access to Mountain Road.
 There is no information in the record from the traffic authority on the traffic considerations of a design with an intersection of the possible accessway with Mountain Road, nor is there a complete topographic map or A-2 Survey of the Mountain Road lot nor engineering and drainage data nor a report from the Town Engineer concerning the possibility of meeting the design standards in the Subdivision Regulations for an accessway to Mountain Road. Until this information is provided the Commission cannot make the finding required of it by Section 5.5.A.1.
 Furthermore, since the proposed rear lot was originally split off the Mountain Road lot, the A-2 survey is necessary to assure the Commission that the approval of the new lot will not result in the creation of a nonconforming lot on Mountain Road.
 2. The prior resubdivision approval of this property dated October 22, 1990, which was granted by this Commission without the filing of said application by the applicant with the Inland Wetlands Watercourses Commission and, therefore, without the benefit of a report by it, is hereby declared void as agreed by the applicant.
3. This action of the Commission shall CT Page 9950 he filed on the Land Records of the Town of Cheshire.
(ROR), Item 12, p. 8)
Notice of the Commission's decision was published on December 5, 1991. It is from this decision that the instant appeal arises.
JURISDICTION
The plaintiff contends that the Commission abused its discretion and acted arbitrarily and illegally in that it was required to grant the 1991 Application based on its similarity to the 1990 Application.
In order to take advantage of a statutory right to appeal from a decision of an administrative agency, there must be strict compliance with the statutory provisions which created that right. Simko v. Zoning Board of Appeals, 206 Conn. 374, 377,538 A.2d 202 (1988). These provisions are mandatory and jurisdictional; failure to comply subjects the appeal to dismissal. Id. Appeals from the Commission are to be taken pursuant to General Statutes 8-8. General Statutes 8-28.
Aggrievement
Section 8-8 provides that "[a]ny person . . . aggrieved by any decision of said board . . . may . . . take an appeal to the superior court. . . ." General Statutes 8-8(a). Aggrievement is a prerequisite to maintaining an appeal. Smith v. Planning 
Zoning Board, 203 Conn. 317, 321, 524 A.2d 1128 (1987).
At the hearing held in this appeal, the court ruled from the bench, finding that plaintiff Ellen R. Levada was aggrieved.
Timeliness
Any person who is aggrieved by a decision of the Commission may take an appeal to the Superior Court. The appeal shall be taken within fifteen days from the date when notice of such decision was published. General Statutes 8-8. Notice of the Commission's decision was published on December 5, 1991.
Richard Bruno, Chairman of the Cheshire Planning and Zoning CT Page 9951 Commission, and Gloria Miller, Assistant Town Clerk for the Town of Cheshire, were both served on December 16, 1991. Accordingly, plaintiff's appeal is timely.
SCOPE OF REVIEW
The standard of review is set forth in McCrann v. Town Planning Zoning Commission, 161 Conn. 65, 70-71, 282 A.2d 900
(1971), which provides:
 In applying their zoning regulations to a particular situation, the commission is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. This court cannot substitute its discretion for the discretion enjoyed by the commission. When reviewing the actions of the commission to determine if its finding complied with the standards set out in the regulations, we are not compelled to indulge in a microscopic search for technical infirmities. The determination of what the public interest requires is within the discretion of the commission. It is only where the local zoning authority has acted arbitrarily or illegally and thus abused the discretion vested in it that the courts can grant relief on appeal. (Citations omitted.)
The burden of proving that the Commission acted arbitrarily, illegally or in abuse of its discretion is on the plaintiff. McCrann, supra, 74.
 It is axiomatic that a planning commission, in passing on a resubdivision application, acts in an administrative capacity and is limited to determining whether the plan complies with the applicable regulations. Reed v. Planning Zoning Commission, 208 Conn. 431, 433, 544 A.2d 1213 (1988); CT Page 9952 Westport v. Norwalk, 167 Conn. 151, 155, 355 A.2d (1974); Gagnon v. Municipal Planning Commission, 10 Conn. App. 54, 57, 521 A.2d 589, cert. denied, 203 Conn. 807, 525 A.2d 521 (1987). It is equally axiomatic that the trial court, in reviewing the action of a planning commission regarding a resubdivision application, may not substitute its judgment on the facts for that of the planning commission. Oakwood Development Corporation v. Zoning Board of Appeals, 20 Conn. App. 458, 460, 567 A.2d 1260
(1990). The conclusions of the commission must stand if even one of the stated reasons is reasonably supported by the record. Id., 460-61.
R. B. Kent Son, Inc. v. Planning Commission, 21 Conn. App. 370,373 (1990).
The test for review of commission administrative proceedings is "whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." Goldberg v. Zoning Commission, 173 Conn. 23,25-26, 376 A.2d 385 (1977).
DISCUSSION
In this case, the Commission denied the plaintiff's 1991 Application for resubdivision. The plaintiff, however, claims that the Commission was required to approve the 1991 Application because it had approved her earlier, 1990 Application. The plaintiff claims that the 1991 Application was, "identical, in all respects, to the original [1990 Application]" that the Commission approved. Plaintiff's Amended Appeal, paragraph 7.
The Connecticut Supreme Court has noted that a "municipal planning commission, in exercising its function of approving or disapproving any particular subdivision plan, is acting in an administrative capacity. . . ." Reed v. Planning and Zoning Commission, 208 Conn. 431, 433, 544 A.2d 1213 (1988). Also, a planning commission, acting in its administrative capacity, "has no discretion . . . but to approve a subdivision if it conforms CT Page 9953 to the regulations adopted for its guidance." Reed, supra, 433. The applicant for a subdivision bears the responsibility of submitting a complete and timely application containing all plans, reports and documents necessary to allow the Commission to undertake its administrative review. Bieluch v. Darien Planning 
Zoning Commission, 7 CSCR 682, 683 (May 15, 1992, Hickey, J.). Where the record supports a conclusion that the applicant has not provided the Commission with sufficient information, the Commission may deny the application. Id.
 The power to reconsider "should not be interpreted with too much refinement, nor should it be hedged about with technicalities." Nevertheless "the power to reconsider is not an arbitrary one, and its exercise should be granted only when there is justification and good cause." Thus while the board is invested with a liberal discretion to decide whether to reverse a former decision, it is a discretion which is subject to review in the courts and it must be reasonably and legally exercised, and based upon evidence which fairly sustains the decision. It "should not ordinarily be permitted to review its own decisions and revoke action once duly taken. Otherwise there would be no finality to the proceeding [and] the result would be subject to change at the whim of members or due to the effect of influence exerted upon them, or other undesirable elements tending to uncertainty and impermanence." (citations omitted)
Burr v. Rago, 120 Conn. 287, 292, 180 A. 444 (1935).
 When the facts and circumstances which actuated an order or a decision are alleged and shown to have so changed as to vitiate or materially affect the reasons which produced and supported it and no vested rights have intervened, it is reasonable and appropriate to the CT Page 9954 functions of the board that the subject-matter be reexamined in the light of the altered circumstances.
St. Patrick's Church Corporation v. Daniels, 113 Conn. 132,139-140, 154 A. 343 (1931).
An administrative agency cannot reverse a prior decision unless: "(1) a change of condition has occurred since its prior decision or (2) other considerations materially affecting the merits of the subject matter have intervened and no vested rights have arisen." Carlson v. Fisher, 18 Conn. App. 488, 497,558 A.2d 1029 (1989)[3] See also, Hoffman v. Kelly, 138 Conn. 614, 6716-17, 88 A.2d 382 (1952), limited by Brook Ledge, Inc. v. Public Utilities Commission, 145 Conn. 617, 620-21, 145 A.2d 590
(1958). However, that principal applies only when the subsequent application seeks substantially the same relief as that sought in the former. Carlson v. Fisher, 497-98. It is not disputed that this appeal involves an application by the plaintiff for the same relief that she sought in her prior application.
Whether an application is substantially the same as a prior application is for the Commission to determine in the first instance. Hotchkiss Grove Association, Inc. v. Water Resources Commission, 161 Conn. 50, 58, 282 A.2d 890 (1971). The same is so as to the determination whether there has been a change of conditions or a new consideration materially affecting the decision. Id. It is the plaintiff's burden to show that there was no new condition or consideration. Grillo v. Zoning Board of Appeals, 206 Conn. 362, 368, 537 A.2d 1030 (1988).
The issue presented by the parties in this case is whether the Commission is permitted to reverse its prior decision because of the particular new information in the 1991 Application. The only new information in the application was the presence of wetlands and the existence of a right of way running to Mountain Road. If the new information amounts to a change of condition or new consideration which materially affects the merits of the subject matter, the Commission is permitted to reverse its prior decision. Carlson v. Fisher, supra, 497.
 To make such changes material, they should generally . . . be of such a character as to show `that the condition of property in the immediate vicinity CT Page 9955 had been changed in a manner militating against the objections formerly interposed.' (citation omitted)
Root v. Zoning Board of Appeals, 41 Conn. Sup. 218, 220 (1989).
The plaintiff applied in both the 1990 Application and the 1991 Application to the Commission for permission to resubdivide her property in a way that would create a rear lot. The 1990 Application was approved and the plaintiff duly recorded the approved resubdivision map on the Cheshire land records, under Conn. Gen. Stat. 5-25. General Statutes 8-25 provides in part, that "any [subdivision or resubdivision] plan not so filed, or recorded within the prescribed time shall become null and void." The only reason that the 1991 Application was filed with the defendant was because the plaintiff became aware when she was preparing to sell the recorded rear lot that it contained wetlands.
General Statutes 8-26 provides, in part, as follows:
 . . . If an application involves land regulated as an inland wetland or watercourse under the provisions of chapter 440, the applicant shall submit an application to the agency responsible for administration of the inland wetlands regulations no later than the day the application is filed for the subdivision or resubdivision. The commission shall not render a decision until the inland wetlands agency has submitted a report with its final decision to such commission. In making its decision the commission shall give due consideration to the report of the inland wetlands agency. . . .
Although the plaintiff agreed to resubmit the Application, the court is not convinced that the above cited language required the filing of the 1991 Application. That the provision for submission of the Application to the appropriate wetland agency is mandatory is undoubtedly correct when the applicant is aware that the application involves land regulated as wetlands. The Commission is also entitled in that case to have that agency's CT Page 9956 report for its consideration.
 Legislative provisions designed to secure order, system and dispatch in proceedings are ordinarily held to be directory where, as here, they are stated in affirmative terms or, to express it differently, are unaccompanied by negative words.
Winslow v. Zoning Board, 143 Conn. 381, 388 (1956). In this case, it should be noted that both the applicant and the defendant and its staff did not discover the existence of the wetlands during the review of the 1990 Application (which was approved in 1990 in accordance with the subdivision regulations and recorded on the land records) and the legislature has not made explicit the expected consequences for not submitting the application to the wetlands agency prior to resubdivision approval, by negative words or other language, such as declaring actions "null and void" when there is no timely wetlands submission, as is the case with an untimely recording on the land records. So, although this issue was not argued or submitted by the parties, the court remains unconvinced that the defendant had or retained any jurisdiction to declare, as it did, the 1990 Application approval void based on the lack of submission in 1990 by the plaintiff to the proper wetlands agency. See ROR, Item 12, p. 8.
However, with respect to the issue presented by the parties, the court adopts the position of the plaintiff that the proposed resubdivision is identical to the one the Commission approved one year earlier. Nothing in the record shows any change of any conditions on the lot since the 1990 Application approval or any considerations materially affecting the merits of the resubdivision action by the defendant to justify reversing the prior decision of the Commission. The proposed resubdivision itself was completely unchanged. It should be noted that "resubdivision" action, under Conn. Gen. Stat. 8-18 and the applicable Cheshire regulations, involves the "change in a map of an approved or recorded subdivision or resubdivision if such change (a) affects any street layout shown on such map, (b) affects any area reserved thereon for public use or (c) diminishes the size of any lot shown thereon and creates an additional building lot, if any of the lots shown thereon have been conveyed after the approval or recording of such map." CT Page 9957
Section 1.16 of the Cheshire Subdivision Regulations define "a rear lot" as "one which is situated to the rear of another lot fronting on or to the rear of another lot fronting on an existing or proposed street, and which does not have the required street frontage." ROR, Item 13, p. 1-3. Cheshire regulations allow the Commission to permit a rear lot. However, before it may allow such a lot, it must first find (1) that "the land characteristics and physical site conditions make the creation of rear lots practical and desirable. . . .", and then determine; (2) that "there is no logical or feasible alternative for the lots to be properly served by an accepted Town road, street or highway at the present time or in the foreseeable future." Cheshire Subdivision and Other Land Use Regulations 5.5.A.1. Thus, before the Commission may create a rear lot, it must first determine that it is practical and desirable to do so, and that there is no logical or feasible alternative to access the lot with a public road. The Commission made that determination with the 1990 Application.
The defendant now argues that because the plaintiff identified the existing right of way to Mountain Road, as it was required to do under Section 4.4.1 of the Cheshire Subdivision Regulations, the Commission can deny the Application because it needs more information to reconsider its prior 1990 rear lot determination under Section 5.5 of the Cheshire Subdivision regulations even though the plaintiff has again identified Nutmeg Lane as the proposed access driveway for the rear lot. The court agrees with the plaintiff that the existence of the accessway to Mountain Road is not such a material consideration affecting the merits of the resubdivision application that can justify the reversal of the prior decision approving the resubdivision.
Also, the Commission denied the application because the plaintiff did not provide sufficient information on the effect that the subdivision would have on a neighboring lot. (ROR, Item 12.) During the hearing on the 1991 Application, neighbors of the subject property raised the issue that the subdivision might create a nonconforming lot in the land adjoining the subject lot. (ROR, Item 9.)
Connecticut law provides that the Commission does not have the authority to authorize a subdivision or resubdivision[4] which conflicts with applicable zoning regulations. Connecticut General Statutes 8-26. When the Commission finds that a zoning CT Page 9958 violation exists on the face of a submitted plan, rather than a speculative violation which arises only depending on the type of use, the Commission must deny the application. Krawski v. Planning Zoning Commission, 21 Conn. App. 667, 670,575 A.2d 1036 (1990).
With respect to this denial based on the need for additional information on alleged nonconformity, the court is also convinced from the record before it that speculation about the creation of a nonconforming lot in the land adjoining the subject lot is not such a consideration materially affecting the merits of the resubdivision itself to justify reversal of the Commission's prior decision.
Additionally, from the court's review of the record, the Commission's stated reasons for denial are not reasonably supported by the record or are pertinent to the considerations the Commission was required to apply under its regulations.
Specifically, the defendant even concedes in its April 7, 1992 brief that the record was less than clear on the rationale for the Commission's denial, based on the rear lot provision. While the Commission has no authority to authorize a resubdivision that conflicts with applicable zoning regulations, there is no requirement in the Cheshire Subdivision Regulations that an applicant show whether there are non-conformities on adjacent property. Similarly, there is no requirement that an applicant submit detailed information on every possible accessway onto the property. The subdivision regulations require that the applicant show the subdivision property and the proposed access driveway and other easements. Cheshire Subdivision Regulations, Section 4.2 et seq. If the subdivision property would be nonconforming, then the Commission would be empowered to deny the application. Similarly, if the proposed access driveway did not meet the requirements of the regulations, then the application could be denied. However, the Commission made those determinations in 1990 and is without any specific authority in 1991 to deny the application for the reasons stated. The record does not support the Commission's conclusion that the applicant has not provided sufficient information to undertake its appropriate administrative review. See Bieluch, supra at 683.
The Commission did not point to any failure of the proposed resubdivision to conform to the applicable regulations. The Commission does not point to any specific regulation that CT Page 9959 required that the requested information needed to be provided in this case. If there was some valid reason the Commission believed the plan did not comply with the applicable regulations, the Commission was under a duty to inform the plaintiff of the noncompliance. See RK Development Corporation v. Norwalk,156 Conn. 369, 377 (1968). Instead, in discussing the Application, two of the Commission members went so far as to point out that the Application does comply with the Regulations. See ROR, Item 11, p. 3-4.
As the Supreme Court stated in RK Development Corporation, supra, 156 Conn. at 377:
 Certainly if the plan had failed in any respect to conform to the regulations, it was the duty and obligation of the council so to indicate. This it failed to do. The council cannot, in utter disregard of the regulations, disapprove the plan for a reason it would not be required to apply to all applications for planned residential developments as to which the same reason obtained. It would amount to substitution of the pure discretion of the council for a discretion controlled by fixed standards applying to all cases of a like nature.
Accordingly, the court finds that the Commission's denial of the plaintiff's resubdivision application is in error. The plaintiff's appeal must be and is sustained.[5]
Clarine Nardi Riddle, J.