HERBERT HARRISON *et al. vs.* ZONING BOARD OF REVIEW OF THE CITY OF PAWTUCKET *et al.*

MAY 25, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

Condon, J. This is a petition for certiorari to review the action of the zoning board of review, hereinafter called the board, of the city of Pawtucket in granting an exception from the requirements of the zoning ordinance of that city prohibiting a three-family house in a residence "B" district. The exception permits the applicant therefor to place on a vacant lot in such district a two-and-one-half story building housing three families, and now situated in an adjacent business district.

Petitioners are owners of land within one hundred feet of such vacant lot, but they did not appear at the hearing on the application before the board because they misunderstood the notice they received. However, in their petition they allege that they did not receive proper legal notice of the hearing. They also allege that the board's decision

was illegal and ought to be quashed because it was not supported by legal evidence and was based on partiality and bias in favor of the applicant. Upon the filing of their petition, certiorari issued commanding the board to send and certify to this court all the records relating to the proceedings on such application. That mandate was duly complied with and those records are here.

It appears therefrom that the applicant's building is similar in outward appearance to several other houses in the district in which he desires to place it. The interior, however, is divided into three independent housekeeping units and the applicant declares that it is a three-family dwelling. In a residence "B" district a house for more than two housekeeping units is not permitted. Zoning ordinance, chapter 312, sec. 4. It further appears that most of the owners of land in the neighborhood of applicant's vacant lot stated in writing to the board that they had no objection to the relocation of his two-and-one-half story building on such lot. Among those signing that statement was one of these petitioners but he now states in this petition for certiorari that the paper which he signed was not read by him and that its contents were misrepresented to him.

The applicant appeared at the hearing and testified that he wished to move the house from its present location in a business district where it is "very crowded" to the vacant lot where it would "fit just right," and that he desired to move the house so that he could build a store on his lot in the business district. He also testified that the house would be improved in appearance and kept in that condition. His counsel who accompanied him made a statement to the board to the effect that the applicant's house is a two-and-one-half story tenement house but in appearance it looks like a two-family house. He represented to the board that there was no objection to the application from neighboring property owners. The mem-

bers of the board took a view of the premises. No remonstrants appeared at the hearing.

After the hearing the board reserved decision and five weeks later decided that the applicant's building conformed to the ordinance; that the only question was as to its use as a three-family dwelling; that such use would in no way affect the neighborhood; that as the housing shortage was causing an acute economic and social problem, they should not decrease the housing facilities by denying such use; that to allow such use would promote the general welfare; and that such use would be in harmony with the character of the neighborhood and appropriate to uses of the district. And as authority for their action they relied upon and cited sec. 16, subsec. (8) of the zoning ordinance.

That section, among other things, recites eight instances in which the board is expressly empowered, after notice and hearing, to determine and vary the application of the ordinance in harmony with its general purpose and intent. The eighth instance is set forth as follows: "(8) Approve in any district an application for any use or building *deemed* by the said Board to be in harmony with the character of the neighborhood and appropriate to the uses or buildings permitted in such district." (italics ours) That provision was enacted by the city council pursuant to subparagraph b. of §8 of the enabling act. General laws 1938, chap. 342.

Under that section the legislature expressly empowered the board: "b. To hear and decide special exceptions to the terms of the ordinance, upon which such board is authorized to pass under such ordinance. c. To authorize upon appeal in specific cases such variance in the application of the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit

of the ordinance shall be observed and substantial justice done."

Those two authorizations differ in several particulars. Under b. the board are restricted in their field of action to such special exceptions as the ordinance prescribes, but the board's exercise of that power in accordance with the ordinance is not circumscribed or controlled by any standards set up in the enabling act. Apparently the state legislature left that matter to the prudence and good judgment of the local legislative body so long as such exceptions were in harmony with the general purpose and intent of the ordinance and in accordance with general or specific rules therein contained or were reasonably necessary for the convenience or welfare of the public. On the other hand, under c. the board receive their power to grant variances in specific cases directly from the enabling act, and no action by the local legislative body is necessary to make that power effective nor can such body limit or control the board in the exercise of that power. The state legislature itself has provided in the enabling act that to entitle the applicant to a variance he must show: (1) that owing to special conditions a literal enforcement of the ordinance will result in unnecessary hardship to him; and (2) that varying the terms of the ordinance as requested will not be contrary to the public interest or the spirit of the ordinance and will do substantial justice.

In the case at bar, while his application states that he is requesting "an exception or a variation," the applicant urged in argument before us that he sought only an exception under sec. 16, subsec. (8) of the ordinance, not a variance, and therefore it was not incumbent upon him to satisfy the board as to reasons (1) and (2) above. Petitioners contended before us that the applicant was not entitled to have the application of the ordinance varied as to him unless he proved unnecessary hardship. It is clear from both the enabling act and the ordinance that

140

this is not so and that the applicant's contention is correct. The distinction between those grounds for relief from the requirements of the ordinance has heretofore been pointed out by this court. *Heffernan* v. *Zoning Board of Review,* 49 R. I. 283, 288. And a well-known pioneer authority in this comparatively new field of law has stated that original applications for exceptions "are essentially different from those in which appeals are heard under the general rule of practical difficulty and unnecessary hardship. They are created by regulations which set forth the instances in which the board of appeals may vary the application of the strict letter of the law." Bassett on Zoning, page 126.

In the case at bar such original jurisdiction has been conferred upon the board by sec. 16, subsec. (8) of the ordinance. However, applications of this nature come to the board usually after the building inspector has refused to issue a permit, just as do applications for a variance. As a result it has become the practice to join in one application a request for an exception or a variance leaving it to the board to determine on which ground they may grant the application. See *Miriam Hospital* v. *Zoning Board of Review,* 67 R. I. 295. Bassett refers with approval to this practice on page 126 of his work.

It is because of such practice that many of our opinions in zoning cases discuss exceptions and variances without differentiating one from the other. But where, as in the case at bar, it appears clearly that the board have acted upon the application as one solely for an *exception under the ordinance* and the remonstrants are urging that the decision is wrong because there is no evidence of hardship on the applicant, it becomes necessary to point out the difference between the two grounds of relief and to show that a lack of such evidence does not of itself vitiate the board's grant of an exception as it would of a variance. This difference was expressly pointed out in a case involving a special enabling act for the town of Westerly containing similar provisions in this respect to the general enabling

act. *Dunham* v. *Zoning Board*, 68 R. I. 88, 96. The decision of the board in the case at bar is an exercise of their discretionary powers, under sec. 16, subsec. (8), of the ordinance, to grant exceptions and not a variance. Therefore its correctness does not depend upon a showing by the applicant of any hardship. Such decision cannot be disturbed by this court except for abuse of discretion.

The power of the board under that section and subsection is very broad. Whether it goes beyond what the legislature intended when it authorized the local legislative body to provide by ordinance for the granting of exceptions in special instances therein set out we do not inquire, as the petitioners here have not questioned the validity of the ordinance but only the exercise of the board's discretion under it.

Under the broad language of subsec. (8) it is difficult for this court to say that the board have abused their discretion in allowing a two-and-one-half story house to be used by three families. They have expressly found that such building and use were, in this case, appropriate to the buildings and uses permitted in the district and in harmony with the character of the neighborhood. On the evidence before them as to the character of applicant's house and their knowledge of the neighborhood as a result of the view which they took, it is apparently their considered judgment that to allow the exception applied for would be in harmony with the general purpose and intent of the ordinance. The board may act upon their knowledge of the character of the district if they make known the nature of such knowledge in their decision. *Buckminster* v. *Zoning Board of Review*, 68 R. I. 515. The members of the board are presumed to have special knowledge in those matters which are so much a part of their administration of the ordinance. *Drabble* v. *Zoning Board of Review*, 52 R. I. 228, 232. However, it will not be presumed that they acted upon such special knowledge in the absence of a

disclosure to that effect. Here such knowledge has been sufficiently disclosed for our purpose.

This court has said that the discretionary power given to the board to grant exceptions "was manifestly intended to provide a necessary flexibility in the zoning ordinances in exceptional cases." *East Providence Mills, Inc.* v. *Zoning Board of Review,* 51 R. I. 428, 432. Subsection (8) of the ordinance before us imparts such flexibility to a marked degree. Whether it goes beyond what was intended by the enabling act is, as we have said above, not now in issue. Such extreme flexibility makes it difficult for this court to find that the board have abused their discretion in granting an application for an exception under that particular subsection except perhaps in some instance where the board have obviously acted without any regard to a judicial determination of the question before them.

On the other hand this court has on a number of occasions found that a board has abused their discretion in denying such an application, especially in those instances where it appeared that such denial resulted in the applicant being deprived of all beneficial use of his land. Such a case arose under the very section and subsection of the ordinance we are now considering. *Sundlun* v. *Zoning Board of Review,* 50 R. I. 108. And in the case of *McCabe* v. *Zoning Board of Review,* 50 R. I. 449, this court held that the board abused their discretion in denying an application for an exception from the requirement of an ordinance which prohibited the building of a garage for more than two cars in a business district. In that case the applicant requested a permit for a thirty-two car garage.

In the case at bar the board have granted the application. Petitioners claim that the applicant's house is not in harmony with the neighborhood and that its use is not appropriate to the uses of the district. There are several uses permitted in the district besides two-family residences, for example, apartment house, boarding house, or hotel, gasoline filling station, stable, or aeroplane landing field.

Zoning ordinance, chap. 312, sec. 4. We cannot say that such a house as the applicant's is not reasonably appropriate to such uses or that it is not in harmony with the neighborhood. The house itself has been found by the board to be not unlike other two-and-one-half story houses in the district and this has not been denied. It is true that the applicant has not advanced strong reasons for the exception he seeks, but the fact is he is not required to do so by the ordinance. Unless it is against the public interest to grant the exception the board are expressly authorized by the ordinance to grant it if they *deem* that the use requested is in harmony with the character of the neighborhood and the uses appropriate to the district. The board have made such a finding and there is some evidence to support it. Therefore we cannot say that to permit a two-and-one-half story house, which outwardly resembles other houses in the district, to be used as a three-family dwelling is a clear abuse of the discretion vested in the board by the ordinance, especially in view of the other uses permitted in the district.

It may be that under such broad discretionary power in the board there is a wide opportunity for "spot zoning," as petitioners contend, but that is not a reason for this court to disturb the board's decision, if the policy of the ordinance permits it. If such power is found to militate against the establishment of a sound zoning policy in the city the cure rests with the local legislative body. It can restrict the board's discretion in the exercise of the power within more definite limits. The ordinance, as it stands, must be applied in passing upon the question whether the board have abused their discretion in granting an exception under it. *Buckminster* v. *Zoning Board of Review*, 69 R. I. 396.

There is no merit in the petitioners' contention that they did not receive proper legal notice of the hearing. The record shows that they received personal notice and also notice by publication.

The petition for certiorari is denied and dismissed, the decision of the respondent board is affirmed, and the writ heretofore issued is quashed. The papers in the case which have been certified to this court are ordered sent back to the respondent board.

*Harlow & Boudreau,* for complainants.

*J. Frederick Murphy,* City Solicitor of Pawtucket, *Irwin Chernick,* Ass't. City Solicitor, for Zoning Board of Review; *Raymond F. Henderson,* for Fairlawn Hardware Co., Inc., Louis J. Salvatore and Michael J. Carbore.