MITCHELL LAND COMPANY *v.* PLANNING AND ZONING
BOARD OF APPEALS OF THE TOWN OF GREENWICH ET AL.

JAMES C. BELL ET AL. *v.* PLANNING AND ZONING BOARD
OF APPEALS OF THE TOWN OF GREENWICH ET AL.

BALDWIN, INGLIS, O'SULLIVAN, QUINLAN and WYNNE, Js.

Argued October 13—decided December 29, 1953

*William C. Strong,* with whom were *Archibald H. Tunick* and, on the brief, *Benjamin F. Ferris,* for the appellant (plaintiff) in the first case and the appellee (defendant Mitchell Land Company) in the second case.

*James A. Dougherty* and *Walter A. Hayes,* with whom was *Lawrence E. Kristoff,* for the appellants (plaintiffs) in the second case and the appellees (defendants Bell et al.) in the first case.

*Halford W. Park, Jr.,* for the appellee (defendant board) in each case.

O'SULLIVAN, J. The salient facts of this litigation may be summarized as follows: The Mitchell Land Company, hereinafter referred to as the company, owns a tract of land in Greenwich upon which it proposes to operate an asphalt mixing plant. The land lies between the Byram River and South Water Street and is located in what the zoning regulations of the town describe as a B-G (general business) zone. The company desires to construct a modern plant capable of turning out 500 tons of mix every day. The proposed structure will be slightly larger than the existing one. The operation of the new plant

is to be mainly automatic and will necessitate the employment of five persons. It is contemplated that asphalt will reach the premises by tank car and that sand and gravel, used in the mix, will arrive by barge. The finished product will be hauled away in covered trucks, each having a capacity of ten tons.

Most of the surrounding area is devoted to industrial uses, although the land on South Water Street across from the company's property is improved with single and double residences. Byram River, in this vicinity, is navigable for vessels of moderate draft. On both of its shores are lumber yards, asphalt and comparable plants, and other industrial enterprises which make use of the river for delivery of raw materials.

On March 25, 1952, the company applied to the local planning and zoning board of appeals for a special exception under the zoning regulations of the town. At an extensive hearing held by the board, it was developed by those opposed to the application that a very large number of trucks would be driven on and leave the property each day, that the presence of these vehicles would create a dangerous traffic situation on South Water Street if the proposed entrances and exits were utilized, and that the unloading of the sand and gravel, together with the movement of the trucks over the company's land, would cause a great deal of dirt and dust in the neighborhood.

As of April 21, 1952, the board voted three to two in favor of granting the company's application, but, since the approval of a special exception required four affirmative votes, the result was a denial of the application. General Statutes, Cum. Sup. 1951, § 159b (as amended, Cum. Sup. 1953, § 285c). From that denial the company appealed to the Court of Com-

mon Pleas. Subsequently, James C. Bell and four other persons, all of whom owned real estate near the site of the plant, were permitted to enter as parties defendant. We shall refer to them as the five property owners.

On June 25, 1952, while the appeal was still pending, the company filed with the board another application for a special exception. After a hearing, the board granted the application as of July 17, 1952, for reasons which were stated in its minutes and are set forth in the footnote.[1] From that action the property owners referred to above appealed to the Court of Common Pleas. The court heard both appeals at the same time and dismissed each of them. From the judgments entered the company has ap-

---

[1] "On re-hearing it appeared that a large industrial use has been permitted on adjoining property since our decision in this case; that Water Street is 50 feet in width; and that the plan has been redesigned to provide entrance and exit ways for trucks and for on-the-lot parking while waiting for loads. There was additional evidence that the sand and gravel unloaded and used in the business would not cause dust, and that limedust would be bagged. Applicant offered to wet down these materials and to confine them to bins, and to oil or surface the ground. These new facts and safeguards and reassurances as to the clean character of the mixing process by modern machinery have persuaded us to grant the appeal, and in doing so we impose the following conditions and safeguards:

"1. Materials shall be wetted down from time to time to prevent dust.

"2. The ground surface of the entire lot shall be covered with oil or asphalt.

"3. The plant shall not be operated on a night shift.

"4. All trucks employed in the business shall park on the premises.

"5. Sand and gravel shall be stored in bins.

"6. The plant shall at no time be operated unless its dust and smoke elimination devices are functioning.

"7. That there shall be evergreen planting to screen the plant from South Water Street.

"8. That the plant be re-located on the lot so that the entrance shall be where the exit is shown on the plot plan which will eliminate crossing the flow of traffic by trucks proceeding south on Water Street.

"9. The parking shall be located in the northeast section of the lot."

pealed to this court in the first-captioned case, and the five property owners have appealed in the second.

Before discussing the appeals, we comment on a new technique which is developing in the field of zoning and which is involved in the cases at bar. Prior to 1947, the statutes did not specifically refer to what has come to be known as special exceptions. In the year just mentioned, the General Assembly, for the first time, empowered zoning boards of appeal "to hear and decide all matters including special exceptions upon which [they are] required to pass by the specific terms of the zoning by-law, ordinance or regulation." General Statutes, Sup. 1947, § 126i. Following the passage of that legislation, the town of Greenwich so amended its zoning regulations as to permit the board to grant special exceptions in every zonal classification. Greenwich Bldg. Zone Regs. (1947) § 28(a)(4).

An exception is not to be confused with a variance. While the two words have often been treated as synonymous, they are readily distinguishable. *Dooling's Windy Hill, Inc.* v. *Springfield Township,* 371 Pa. 290, 293, 89 A.2d 505; *Lukens* v. *Ridley Township Zoning Board,* 367 Pa. 608, 612, 80 A.2d 765; *Devereux Foundation, Inc., Zoning Case,* 351 Pa. 478, 483, 41 A.2d 744; *Heath* v. *Mayor,* 187 Md. 296, 303, 49 A.2d 799; *Harrison* v. *Zoning Board,* 74 R.I. 135, 140, 59 A.2d 361; 8 McQuillin, Municipal Corporations (3d Ed.) p. 280; 1 Yokley, Zoning Law & Practice (2d Ed.) § 133. Under a provision usually found in municipal zoning regulations, including those of the town of Greenwich (§ 28[a][3]), a variance may be granted only when the application of the law presents a practical difficulty or imposes an unnecessary hardship upon the property owner. An exception, however, is not, under the Greenwich regulations,

contingent upon the existence of either difficulty or hardship. In the case of a variance, a literal enforcement of the regulations is disregarded; the conditions permitting an exception are found in the regulations themselves and, furthermore, those conditions may not be altered. *Stone* v. *Cray,* 89 N.H. 483, 487, 200 A. 517. Speaking broadly, then, a variance[1] is authority extended to the owner to use his property in a manner forbidden by the zoning enactment. An exception, on the other hand,

[1] Cases in which a variance has been sought, although in certain instances the owner was actually, though unwittingly, seeking an exception: *Parsons* v. *Board of Zoning Appeals,* 140 Conn. 290, 99 A.2d 149; *Sipperley* v. *Board of Appeals on Zoning,* 140 Conn. 164, 98 A.2d 907; *O'Connor* v. *Board of Zoning Appeals,* 140 Conn. 65, 98 A.2d 515; *Farr* v. *Zoning Board of Appeals,* 139 Conn. 577, 95 A.2d 792; *Heady* v. *Zoning Board of Appeals,* 139 Conn. 463, 94 A.2d 789; *Cohen* v. *Board of Appeals on Zoning,* 139 Conn. 450, 94 A.2d 793; *Piccirillo* v. *Board of Appeals on Zoning,* 139 Conn. 116, 90 A.2d 647; *Misuk* v. *Zoning Board of Appeals,* 138 Conn. 477, 86 A.2d 180; *Hertzsch* v. *Zoning Board of Appeals,* 137 Conn. 599, 79 A.2d 767; *Celentano* v. *Zoning Board of Appeals,* 136 Conn. 584, 73 A.2d 101; *Gunther* v. *Board of Zoning Appeals,* 136 Conn. 303, 71 A.2d 91; *Wadell* v. *Board of Zoning Appeals,* 136 Conn. 1, 68 A.2d 152; *Berkman* v. *Board of Appeals,* 135 Conn. 393, 64 A.2d 875; *Rafala* v. *Zoning Board of Appeals,* 135 Conn. 142, 62 A.2d 337; *Celentano* v. *Zoning Board of Appeals,* 135 Conn. 16, 60 A.2d 510; *Delaney* v. *Zoning Board of Appeals,* 134 Conn. 240, 56 A.2d 647; *Stavola* v. *Bulkeley,* 134 Conn. 186, 56 A.2d 645; *Bishop* v. *Board of Zoning Appeals,* 133 Conn. 614, 53 A.2d 659; *Kamerman* v. *LeRoy,* 133 Conn. 232, 50 A.2d 175; *Devaney* v. *Board of Zoning Appeals,* 132 Conn. 537, 45 A.2d 828; *DeFelice* v. *Zoning Board of Appeals,* 130 Conn. 156, 32 A.2d 635; *Nielsen* v. *Board of Appeals on Zoning,* 129 Conn. 285, 27 A.2d 392; *Benson* v. *Zoning Board of Appeals,* 129 Conn. 280, 27 A.2d 389; *Torello* v. *Board of Zoning Appeals,* 127 Conn. 307, 16 A.2d 591; *Rommell* v. *Walsh,* 127 Conn. 272, 16 A.2d 483; *First National Bank & Trust Co.* v. *Zoning Board of Appeals,* 126 Conn. 228, 10 A.2d 691; *St. John's Roman Catholic Church* v. *Board of Adjustment or Appeals,* 125 Conn. 714, 8 A.2d 1; *Grady* v. *Katz,* 124 Conn. 525, 1 A.2d 137; *Piccolo* v. *West Haven,* 120 Conn. 449, 181 A. 615; *Thayer* v. *Board of Appeals,* 114 Conn. 15, 157 A. 273; *Greenwich Gas Co.* v. *Tuthill,* 113 Conn. 684, 155 A. 850; *Lathrop* v. *Norwich,* 111 Conn. 616, 151 A. 183.

allows him to put his property to a use which the enactment expressly permits.

We turn now to the appeal taken by the five property owners. Several of their assignments of error, though stated in various ways, resolve themselves into the claim that the board was legally powerless to act on the second application because no change in conditions had occurred since the decision on the first application, and because any new considerations were immaterial and, in any event, were matters which could have been advanced at the hearing on the first application. From the inception of zoning to the present time, we have uniformly held that a zoning board should not ordinarily be permitted to review its own decisions and revoke action once duly taken. *St. Patrick's Church Corporation* v. *Daniels,* 113 Conn. 132, 137, 154 A. 343; *Burr* v. *Rago,* 120 Conn. 287, 292, 180 A. 444; *Rommell* v. *Walsh,* 127 Conn. 272, 276, 16 A.2d 483; *Torello* v. *Board of Zoning Appeals,* 127 Conn. 307, 311, 16 A.2d 591; *Hoffman* v. *Kelly,* 138 Conn. 614, 616, 88 A.2d 382. Otherwise, as we have repeatedly said, there would be no finality to the proceeding and the decision would be subject to change at the whim of the board or through influence exerted on its members. *Dadukian* v. *Zoning Board of Appeals,* 135 Conn. 706, 712, 68 A.2d 123. The power of a zoning board to reconsider under some circumstances has, however, never been denied. We have consistently recognized its right to exercise that power (1) when a change of conditions has occurred since the prior decision of the board or (2) when other considerations materially affecting the merits of the subject matter have intervened and no vested rights have arisen. *Sipperley* v. *Board of Appeals on Zoning,* 140 Conn. 164, 167, 98 A.2d 907.

Finality of decision is just as desirable in the case of an exception as in one involving a variance. Because of the nature of an exception, however, the power of a zoning board to review a prior decision denying the exception is not limited, as it is when a variance is sought, to the two situations mentioned above. An additional situation arises when the owner requesting an exception files a subsequent application altering the plan under which he previously sought the exception, in order to meet the reasons for which the board denied the prior one. To justify a variance, it must appear that adherence to the strict letter of the zoning regulations will cause practical difficulties or place unnecessary hardships upon the owner. *Berkman* v. *Board of Appeals,* 135 Conn. 393, 399, 64 A.2d 875; *Rafala* v. *Zoning Board of Appeals,* 135 Conn. 142, 146, 62 A.2d 337. To justify a special exception, on the other hand, it must appear that the manner in which the owner proposes to use his property will satisfy the conditions imposed by the regulations. If, therefore, upon a second request for a special exception, there is a substantial change in the manner of use planned by the owner, the board is faced with an application materially different from the one previously denied. It may well be that the new plan, by reason of the changes made therein, will succeed, where the former failed, in satisfying the conditions enumerated in the regulations. Under such circumstances, the board is not precluded from granting the second application merely because it has denied the first.

The facts in the cases at bar afford a good illustration of the additional type of situation to which we have referred. In filing the second application, the company advised the board that the original plans, portraying the use to which it intended to apply its

property upon the granting of the requested special exception, had been materially altered. At the hearing held on the application, it was established that the plans had been revised to meet objections disclosed at the first hearing; entrances and exits had been relocated to reduce danger from the movement of traffic to and from the property; a large area on the premises was set aside as a parking place for trucks, thus keeping them off South Water Street; and dust in the air was to be largely eliminated by a sprinkling process upon the sand as it was unloaded from the barges and by the oiling of the property over which vehicles would pass. Since the alterations under which the company renewed its application were different from those under which it formerly sought an exception and since they met the objections prompting the previous denial, the board was justified in taking the action that it did.

In reaching this conclusion, we have not overlooked a statement, appearing in the board's minutes, which was made by the two dissident members after the first hearing. The statement recites that "the proof fails to establish that the nature of the business is 'light' from the point of view of bulk material used in the industrial process employed." If we assume that the two members were referring to the provision in the ordinance which precluded the board from granting an exception to the company if its proposed plant was not a light industry, it does not follow that they decided that the plant would not fall within that classification. The statement amounts to nothing more than a refusal to determine, at the first hearing, whether the plant would be a light industry or not. The board was not prohibited from re-examining that question on the second hearing.

Another assignment of error raises the claim that

the pendency of the appeal from the decision on the first application rendered the board without jurisdiction to act. As pointed out, the second application was entirely distinct and separate from the prior one. That the company had an appeal pending on the same general subject matter did not render the board without power to hear and act upon a new and different application.

The final claim pursued in the brief of the five property owners is that the board acted illegally at the second hearing in considering facts presented at the earlier one. The occurrence of which complaint is now made consisted of the following: To shorten the hearing on the second application, the company introduced the minutes, record and exhibits of the first application. The five property owners who were in attendance and were represented by counsel raised no objection to this procedure. For this reason alone, they have no standing to press their present complaint. But, that aside, proceedings before a zoning board are informal. *Saporiti* v. *Zoning Board of Appeals,* 137 Conn. 478, 482, 78 A.2d 741. Nor are they carried out under the strict rules of evidence. "The only requirement is that the conduct of the hearing shall not violate the fundamentals of natural justice." *Parsons* v. *Board of Zoning Appeals,* 140 Conn. 290, 292, 99 A.2d 149. There is nothing in the record to indicate that this requirement was ignored.

In view of our conclusion that there is nothing erroneous in the appeal of the five property owners, we dismiss the other appeal, as suggested by the company.

There is no error in the second-captioned appeal; the first-captioned appeal is dismissed.

In this opinion the other judges concurred.