[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
STATEMENT OF THE CASE
The named plaintiff, Calvin Bell and other residents[1] bring this appeal pursuant to General Statutes § 8-8 to contest a decision of the defendant, the Planning and Zoning Commission of the City of Bridgeport ["the Commission"]. In this decision, the Commission granted the defendant 2500 SS Limited Partnership's ["the Partnership"] application to rezone an area from a Residence A Zone to a Design Business District #1 Zone. The plaintiffs also contest the Commission's decision to grant a special permit for the Partnership to construct a Super Stop Shop on property located at 2500 Madison Avenue. This property is presently owned by Dewhirst Realty Associates.
The property is currently being used in a light industrial fashion by Wade's Dairy as a dairy product transfer station called the Dewhirst Dairy Farm. (ROR, Item e, p. 1, 5; Item 2(a): Transcript of the Public Hearing, p. 2). The Dewhirst Dairy Farm consists of two masonry industrial buildings, loading docks, and refrigeration units. (ROR, Item 2(a), p. 2). The dairy employs 20-25 full time employees and 8 to 9 part-time employees. (ROR, Item 2(a), p. 3). This non-conforming use has been regularly expanded since the dairy was built in 1940. (ROR, Item: e, p. 1).
On March 23, 27, and 28, 1994, the P Z Commission conducted public hearings on the Partnership's application. (ROR, Item 2(a)). Six of the nine members of the P Z Commission voted to grant the application with certain conditions.
Previously in 1990, Dewhirst Realty Associates sought to change the property's zoning designation to a Design Business District #1 and to obtain a permit to construct three, one-story buildings to be used for retail sales on the property. (ROR, zoning Item: A copy of a letter dated October 11, 1990, from the Commission to the attorney of Dewhirst Realty Associates, John CT Page 2820 Betar). The Commission denied this 1990 application.
DISCUSSION
 I Aggrievement and Scope of Review
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiffs' appeal." Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 192, 676 A.2d 831 (1996). "The plaintiff[s] can demonstrate statutory aggrievement pursuant to [General Statutes] § 8-8 (a)(1) if [they] can demonstrate that [their] property abuts or is within 100 feet of any portion of the land involved in the decision of the commission." (Internal quotation marks omitted.) McNally v. Zoning Commission,225 Conn. 1, 6, 621 A.2d 279 (1993). On the basis of the uncontested evidence presented by the plaintiffs, the court finds that the plaintiffs have established aggrievement sufficient to satisfy the jurisdictional requirement by their ownership of property within 100 feet of the property in question.
"In reviewing an appeal from an administrative agency, the trial court must determine whether the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotations marks omitted.) Smith v.Zoning Board of Appeals, 227 Conn. 71, 80, 629 A.2d 1089 cert. denied, 114 S.Ct. 1190 (1994). "Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing." (Internal quotations marks omitted.) Bloom v. Zoning Board ofAppeals, 233 Conn. 198, 206, 658 A.2d 559 (1995). "Where a zoning commission has formally stated the reasons for its decision, the court should not go behind that official collective statement of the commission." (Brackets omitted; Internal quotations marks omitted.) West Hartford InterfaithCoalition, Inc. v. Town Council, 228 Conn. 498, 514,636 A.2d 1342 (1994). "The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Internal quotations marks omitted.) Bloom v. Zoning Board of Appeals, supra,233 Conn. 206. CT Page 2821
 II Zone Change Decision
 A
The first issue presented by plaintiffs' appeal is whether the Commission's decision authorizing the zone change was erroneous because there were no intervening, material changes in the circumstances since the Commission's previous denial of the 1990 Dewhirst Dairy Realty Associates zone change application. The court rejects the plaintiffs' argument that the Commission could only grant the Partnership's zone change application if there was a change in circumstances since 1990 and agrees with the defendants that the Commission's discretion is not so limited when acting in its legislative capacity to change zoning regulations. Morningside Assn. v. Planning Zoning Board,162 Conn. 154, 157-58, 292 A.2d 893 (1972).
In Morningside, the trial court reversed the zoning board's approval of a zone change because there was no showing of any changed conditions in the area since the board's denial of a similar application. The Supreme Court set aside the trial Court decision and explained the rule as follows:
 Ordinarily, unless new conditions arise which substantially alter the character of an area, a change in zone classification is unwarranted. A local zoning . . . authority, however, acts in a legislative capacity when it enacts or amends its regulations . . . In acting, such a legislative body must be relatively free to amend or modify its regulations whenever time and experience have demonstrated the need for a revision. . . . The board acting in a legislative capacity was therefore, not bound by the general rule which would prohibit it from reversing an earlier decision without evidence of a change in conditions. . . . "The discretion of a legislative body, because of its constituted role as a formulator of public policy, is much broader than that of an administrative board [such as a zoning board of appeals], which serves a quasi-judicial function. Thus, although we have said that a zoning commission should not ordinarily alter the classification of a certain area in the absence of changed conditions, it CT Page 2822 is clear that this rule, which is a restriction on the principle of legislative discretion, will only be applied in those rare instances where the zoning amendment is patently arbitrary. A less strict rule would require the court to exercise a legislative judgment." (Citations omitted; emphasis added.)
Id. 156-59 quoting Malafronte v. Planning Zoning Board,155 Conn. 205, 209, 230 A.2d 606 (1967).
As discussed in more detail below, this court finds that the Commission's decision authorizing the zone change is not patently arbitrary.
 B
In the present case, the zoning commission granted the change of zone application on the following grounds: it complies with the Comprehensive Plan the Plan of Development of the City of Bridgeport; the change is an upgrade in zoning from the use that presently exists at the subject site; the proposed development would be an asset to the area; and there has been a change in circumstances since 1990. (ROR, Item: kkk).
"The test of the action of the commission is two-fold: (1) The zone change must be in accord with a comprehensive plan, General Statutes § 8-2, . . .and (2) it must be reasonably related the normal police power purposes enumerated in [General Statutes] § 8-2." (Citations omitted.) First Hartford RealtyCorp. v. Plan Zoning Commission, 165 Conn. 533, 541,338 A.2d 490 (1973).
The comprehensive plan may be found by looking at the overall scheme of the zoning regulations themselves. Stiles v.Town Council, 159 Conn. 212, 227, 268 A.2d 395 (1970). "A comprehensive plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential use of the properties." (Internal quotations marks omitted.) Id. 227. "[T]he plan of development, properly called a `master plan'. . . is, in any event, merely advisory so far as zoning is concerned. Faubel v. ZoningCommission, 154 Conn. 202, 207 224 A.2d 538." (Citations omitted.) First Hartford Realty Corp. v. Plan ZoningCommission, supra 165 Conn. 542. CT Page 2823
The issue whether the zone change is consistent with the policies of the City's master plan and within the legitimate exercise of the municipality's police power is a close question on this record as reflected by the contentiousness of the public hearings and the split vote of the Commission. The critical nature of the Commission's review of this zone change application is heightened by the Commission's denial of the 1990 application for reasons which on their face would appear to support denial of the present application.[2]
The court would reject many of the Partnership's arguments if presented to the court in the first instance. This court's focus, however, is not on the arguments advanced by the applicant before the agency. The proper focus of a reviewing court is on the reasons given by the Commission to support its decision and on whether these reasons find substantial support in the record. The law is well established that this court cannot reverse a decision of the Commission simply because the court disagrees with some aspects of the decision or because the court would view the evidence differently if considered on a de novo basis. The zoning authority is charged with having the expertise and responsibility "for deciding such matters of local concern as the reasonable expansion of zoning regulations to meet local needs. . .and unless exercised irrationally or irresponsibly, [the agency's decision] is not subject to judicial interference." Parks v. Planning Zoning Commission,178 Conn. 657, 663, 425 A.2d 100 (1979). It is not the proper function of the reviewing Court "to retry the case or substitute its judgment for that of the administrative agency." IntevaleHomeowners Association v. Environmental Protection Board,19 Conn. App. 334, 337, 562 A.2d 536 (1989). (Internal quotation marks omitted.) The Commission's decision must be sustained if any one of the reasons given for the decision are substantially supported in the record. See Huck v. Inland Wetlands andWatercourses Agency, 203 Conn. 525, 539-541, 525 A.2d 940
(1987).
It is within the strictures of this limited scope of review that the court must consider the reasons identified by the Commission to explain its decision authorizing the zone change:
 (1) the proposal complies with the City's Comprehensive Plan and the Plan of Development; CT Page 2824
 (2) the change is an upgrade in zoning from the use that presently exists at the subject site;
 (3) the proposed development would be an asset to area.
 (4) there has been a change in circumstances since 1990. (Return of Record 1-kkkk)
The second and fourth reasons cited by the Commission to support its decision are that this zone change would be an upgrade in the present use of the site and that the circumstances changed since 1990. It is very questionable whether either of these individual reasons would provide a sufficient basis to justify the zone change unless the change would also be consistent with the master plan and would be an asset to the community. Whether the proposal complies with the master plan and represents an asset to the area requires a discussion of the record developed before the Commission.
The Commission received evidence concerning the fiscal impact of the proposal on the City of Bridgeport from Lawrence Kenney, the president of Scott, Kenney Partners, a real estate consulting firm. Kenney evaluated the different fiscal consequences to the City if the property was used to build: (1) a supermarket; (2) a subdivision of single family homes; and (3) a subdivision of multi-family housing. (ROR, Item 2(a), p. 38; Fiscal Impact Report). Kenney stated that the purpose of a fiscal impact analysis is to project the probable direct public cost and revenue associated with a residential or non-residential development. (ROR, Item 2(a), p. 39). The net annual fiscal impact is calculated by subtracting the annual expenditures from the annual revenues. (ROR, Item 2(a), p. 39). It was his conclusion that the greatest tax benefit to the City of Bridgeport would accrue with the supermarket scenario. (ROR, Item 2(a), p. 39)
Evidence was also presented to the Commission that the Stop Shop would employ 350 employees and generate approximately 150 jobs during the construction of the project. (ROR, Item 2(a), p. ). The total payroll for the 350 new employees was estimated to be approximately $3,500,000. (ROR, Item m. p. E-4).
The petitioner's real estate expert, Peter Ziedel, stated that the land in question is too expensive to feasibly build CT Page 2825 single family homes. (ROR, Item 2(a), p. 26). Ziedel also found that there is no market for condominium development in Bridgeport or in its immediate area. (ROR Public Hearing, p. 25). Based on the fact that Bridgeport ranked third in the State for affordable housing, Zeidel opined that "some type of affordable housing on this site was probably not needed and would be questionable as far as the development of the site." (ROR, Public Hearing, p. 25). Ziedel also testified that the proposed supermarket would have no effect on the market values of properties in the neighborhood and would be in accordance with the orderly development of the City and the neighborhood. (ROR, Item 2 (a, p. 24).
Alan Davis, the petitioner's traffic expert, testified about the potential impact on traffic from the construction of a Stop Shop. In making his findings, Davis took into consideration the traffic modifications contemplated under the proposal. (ROR, Item 2(a), p. 32). Davis' determination was that "the total amount of added traffic on any street would be almost imperceptible . . . [and] [i]n some cases, there could be a reduction in the amount of traffic as neighbors close to the site shop nearby rather than traversing other neighborhood streets to reach their current supermarket." (ROR, Traffic Report, p. 4). In a letter addressed to Davis, the City Traffic Engineer, Morteza Hayatgheybi, stated that "[s]oley from a Traffic Engineering point of view, the [Partnership's] proposed Traffic Operations Plan has mitigated negative traffic impacts as [a] result [of] traffic generated from the proposed Stop 
Shop by improving the geometry of Madison Avenue; providing a traffic signal at the intersection of Madison Avenue and Albemarle Street; and providing a bus-stop bay for public transit use." (ROR, Letter from Morteza Hayatgheybi, City Traffic Engineer).
These reports and the Partnership's application were critiqued for the Commission by William Minor, the Director of Land Use Construction Review for the City of Bridgeport. In his report, Minor noted that the proposal was consistent with the policies of the Master Plan to encourage the expansion of businesses in Bridgeport and to increase the productive use of under-utilized land. The proposal also advanced the policy to maximize land use development in the city. Furthermore, Minor stated that the proposal was consistent with the city's overall Economic Development Program because the proposal would create jobs and improve the City's tax base (ROR, Item 3).[3]
CT Page 2826
Minor, however, did find that the proposal is inconsistent with other policies of the Master Plan, including the goals: to ensure proper balance between residential and commercial activities; to encourage economic activities in the most suitable areas for long term development; to limit development opportunities to activities that will preserve and enhance the quality of residential areas; to attract industries to the city whose presence will in turn create markets for new firms; and to direct development where it is ideally desirable and not where it wants to go. (ROR, Item e).
The plaintiffs also assert that other arguments were presented to the Commission which mirrored many of the concerns raised by Minor. Plaintiffs insist that there would be more traffic intensity created by the proposed Stop Shop. The existing dairy plant does not service retail customers, but the Stop Shop would. Davis, the Partnership's traffic expert, estimated that the Stop Shop would generate 900 vehicle trips during the week day peak hour, whereas 14 vehicle trips are generated by the dairy plant during this period. Another point made by the plaintiffs is that this rezoning could facilitate the entry of other businesses into the area now prohibited by the residential zone, including hotels, theaters, restaurants and retail stores. Such business development would not only enormously increase traffic congestion, but would also affect the overall character of the neighborhood.
Plaintiffs further argue that most of the disadvantages cited by Minor could be avoided and all of the tax advantages proffered by the Partnership could be achieved by the location of this supermarket in an area already zoned for such use. The plaintiffs also note that other "super" stores presently service this community and are located in a nearby business zone.
Counterarguments exist as to all these concerns raised by the plaintiffs. The construction of a supermarket in another zone is an alternative only if practically feasible and actually proposed. The traffic concerns for this specific construction have been addressed in the Partnership's proposal and future development would be reviewed by the Commission on a case by case basis. There are other supermarkets in the area, but their services are not fully satisfying the community's needs.
The point of this discussion, however, is not for this CT Page 2827 court to actually weigh or reconcile these opposing positions under its limited scope of review. Although many factors existed against the granting of the zone change, the point here is that substantial evidence did exist in the record to support the Commission's decision that the proposal sufficiently complied with the Master Plan and would be an asset to the area. The Commission has the responsibility to weigh the very divergent and conflicting considerations presented by this proposal, and on this record, the Court cannot conclude that the Commission abused its discretion. "If any reason culled from the record demonstrates a real or reasonable relationship to the general welfare of the Community, the decision of the Commission must be upheld." (Emphasis added.) Parks v. Planning ZoningCommission, supra 178 Conn. 662-63. Where the zoning authority acts to expand the amount of commercial development "in the best interests of the community as a whole and in accordance with a comprehensive plan, the requirement of [General Statutes] § 8-2
that zoning regulations be designed to promote the general welfare, `with a view to . . . encouraging the most appropriate use of the land' throughout the community is satisfied." FirstHartford Realty Corp. v. Plan Zoning Commission, supra,165 Conn. 543-44.
 C
The plaintiffs also argue that the action of the zoning commission constituted spot zoning. "Simply, defined, spot zoning is the reclassification of a small area of land in such a manner as to disturb the tenor of the surrounding neighborhood." Morningside Assn. v. Planning Zoning Board,
supra, 162 Conn. 161. "For the plaintiffs to prevail on this ground, two elements must be satisfied before spot zoning can be said to exist." Id. "First, the zone change must concern a small area of land. . . . Second, the change must be out of harmony with the comprehensive plan for zoning adopted to serve the needs of the community as a whole." (Citations omitted; internal quotation marks omitted.) Id.
As discussed above, although the record in this case does not completely support the proposal, substantial evidence exists in the record to support the Commission's determination that the zone change conforms to Bridgeport's comprehensive plan. Consequently, the action of the board does not constitute spot zoning. Although the Partnership and the present property owner will receive direct benefits from the zone change, these CT Page 2828 benefits alone do not make the Commission's decision spot zoning "so long as the change is in accordance with the comprehensive plan and the central purpose for the change is in benefiting the community as a whole as opposed to the owner of the property" . . . . Morningside Assn. v. Planning Zoning Board,
supra 162 Conn. 162.
 III Special Permit Decision
The plaintiffs contest the Commission's approval of the Partnership's application for a special permit to construct the Super Stop Shop on the ground that there were no changes in the circumstances since the denial of the 1990 special permit application filed by the property owner, Dewhirst Realty Associates. In reviewing an application for a special permit, the Commission acts in an administrative capacity to determine whether the proposed use is authorized and consistent with the zoning regulations and statutes.
 "An administrative agency that has acted on a special permit application is not allowed to reverse itself unless a change of circumstances intervenes that materially affects the merits of the case, except that it can grant a second application that has been substantially changed to meet the objections the agency has to the original application. Rocchi v. Zoning Board of Appeals, 157 Conn. 106, 111, 248 A.2d 922 (1968); Mitchell Land Co. v. Planning Zoning Board of Appeals, 140 Conn. 527, 534-35, 102 A.2d 316
(1953)." Grace Community Church v. Planning Zoning Commission, 42 Conn. Sup. 256, 271.
Significant differences exist between the 1990 proposal and the present one. The 1990 application was for a strip mall involving the construction of three one-story retail sales buildings consisting of 61,209 square feet of floor space. The present application involves the construction of a one tenant supermarket having a total floor space of approximately 82,998 square feet. The record indicates that there is a demand in the community for supermarket services, whereas there is no evidence of a commensurate demand for the services contemplated for the stores of the 1990 proposal. In 1990, the site contained an historic structure which does not exist now because of a fire. CT Page 2829 The 1990 application proposed minor modifications to the existing traffic conditions. The present proposal includes traffic and infrastructure improvements to address the increased traffic volume. Thus there are significant differences between the 1990 application and the present application as well as differences between the circumstances of their submission. Contrary to the plaintiffs' contention, these differences cannot be characterized as a mere change "in the number of doors." The size and supermarket character of the present proposal, as well as the community need for this specific service, all distinguish this proposal from the one submitted in 1990.
Increased traffic congestion was the one specific reason stated by the Commission in 1990 to support the denial of Dewhirst Realty Associates' special permit application. Under the zoning regulations and statutes, traffic congestion is clearly a factor which must be considered by the Commission when reviewing a special permit application. C.G.S. § 8-2; BridgeportZoning Regulations Chapter 11A, § 5d. The plaintiffs' straightforward argument is that since the smaller 1990 proposal failed because it increased traffic congestion, the Partnership's much larger proposal must also fail. The record indicates that the Dewhirst proposal contemplated an estimated 490 vehicle trips during the weekday peak period, whereas the Super Stop Shop is estimated to generate 900 vehicle trips during the weekday peak hours. The short response to this argument is that the present proposal contains specific improvements to mitigate the increased traffic levels, and the Commission appears to have received more extensive and detailed information about the traffic issues as part of this proposal as compared to the 1990 petition. (ROR, Item ff, pp. 7-8)
There is no dispute on this record that the Super Stop 
Shop will generally increase traffic volume in the area and will specifically decrease traffic service levels at some of the surrounding intersections. As previously stated, however, traffic congestion, and not traffic intensity is the primary consideration of the zoning regulations and statutes. The plaintiffs' emphasis on increased traffic levels would effectively mean that any significant increase in traffic intensity would require a denial of a special permit, which would be contrary to the zoning emphasis on traffic congestion.Pecora v. Zoning Commission, 145 Conn. 435, 440, 144 A.2d 48
(1958) ("It is not the overall volume of daily traffic, but `congestion in the streets', that is, density of traffic, which CT Page 2830 is referred to in the statute.")
The Commission received and reviewed a significant amount of evidence about the traffic impact of the proposal; and some of this evidence was conflicting. This evidence, as previously discussed, included the traffic report of Allan Davis, the traffic review by the City traffic engineer, and the testimony of residents from the area. The city traffic engineer was satisfied that the proposal sufficiently "mitigated negative traffic impacts", whereas the residents testified about how existing traffic congestion would be aggravated by the additional traffic caused by a Super Stop Shop. "The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency."Burnham v. Planning Zoning Commission, 189 Conn. 261, 265,255 A.2d 339 (1983). There is certainly sufficient information in the record to support the Commission's weighing of this conflicting evidence in favor of the applicant. The Court cannot substitute its fact-finding discretion for that of the agency or conclude on this record that the Commission's decision was an abuse of discretion. See Mitchell Land Co. v. Planning Zoning Board, 140 Conn. 527, 534-35. 102 A.2d 316 (1953).
 IV Procedural Claims
 A
The plaintiffs further appeal on the ground that the Chairperson's exclusion of two permanent members of the Commission from the public hearing held on March 28, 1995, and the subsequent vote on the Partnership's application by two alternate members renders the Commission's decision void. The regular members of the Commission were absent at the hearing held on March 27, 1995 and they were replaced by alternates. The regular members attended the hearing held the following day, but the alternates, who had been seated in their place voted, instead of the regular members.
The plaintiffs claim that since the regular members were available on March 28, 1995 and made efforts to review the case, they should have been seated to vote instead of the alternates. The plaintiffs, however, have the burden of proof on this issue; see Loh v. Town Planning Zoning Commission, 161 Conn. 32, 41-42, CT Page 2831282 A.2d 894 (1971); and they have pointed to no evidence that these regular members actually succeeded in familiarizing themselves with the previous day's proceedings, which involved six hours of testimony and presentations. The court is satisfied on this record that the two regular members were unable to sufficiently acquaint themselves with the issues, evidence and arguments presented at the March 27, 1995 hearing to make an informed decision. Furthermore, even if they did sufficiently acquaint themselves with the previous day's proceedings, these plaintiffs would have suffered no prejudice and would have no reason to complain if the Commission still chose to use the alternates.
General Statutes § 8-1b provides in pertinent part: "[A]lternate members shall, when seated as herein provided, have all the powers and duties set forth in the general statutes or any special act relating to such municipality for such commission and its members. . . ." The Commission By-laws state: "The voting rights (and privileges) of the alternate shall, when seated, have all the powers and duties set forth in the General Statutes relating to the City of Bridgeport for the Planning and Zoning Commission and its regular members except when voting on policy matters."
Consequently, under the controlling statute and rule, the alternates, when seated, assumed all the responsibilities of the regular members regarding the review and vote on the application. When the hearings resumed on March 28, 1995, the alternates were properly seated and personally familiar with the proceedings, and it was within the sound exercise of the Commission's discretion to determine whether they should continue their participation or be replaced by the regular members in order to ensure an orderly and efficient completion of the hearings.
 B
The plaintiffs assert two remaining procedural arguments to support their appeal. First, during the rebuttal phase of the hearing, the Partnership's attorney, Charles Willinger, submitted a petition containing over 3,000 signatures from people in favor of the proposed construction and pictures showing other supermarkets located near residential neighborhoods. The plaintiffs claim that their due process rights were violated because the Commission did not allow them CT Page 2832 to respond to the rebuttal evidence offered by the Partnership's attorney, Charles Willinger. The plaintiffs, however, have not indicated what response they desired to make, or how they were actually prejudiced by their inability to respond. In light of the length of the proceedings, the extensiveness of the record, and the nature of the rebuttal evidence, the Commission did not act unreasonably by precluding surrebuttal and did not violate the plaintiffs' procedural rights.
Finally, the plaintiffs contend that prior to the public hearing, the Commission decided that they were going to approve the proposed project, thereby, rendering the Commission's decision illegal. To meet their burden of proof on this issue the plaintiffs must show that the "commissioners had made up their minds that they were going to [approve] the plan regardless of any evidence or argument presented at the public hearing. Only such a finding could support the conclusion that the commissioners had crossed the line between permissible formulation of a tentative opinion and illegal prejudgment of the issue." Daviau v. Planning Zoning Commission,174 Conn. 354, 358, 387 A.2d 562 (1978).
The Commission conducted two lengthy public hearings in which it heard from residents who opposed the application. (ROR, Item: 2(a)). Furthermore, the grounds upon which the zoning commission granted the application are reasonably supported by the record and are pertinent to the considerations which the Commission was required to apply under the zoning regulations. The present record does not support the plaintiffs' claim that the commissioners had preliminarily decided to approve the Partnership's application regardless of any evidence or argument presented at the public hearings.
CONCLUSION
Therefore, for all the foregoing reasons, the plaintiffs' appeal is denied.[4]
Dated this 7th day of March, 1997
STEVENS, JUDGE