[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
By application dated February 28, 1996, A.M.S.K., Inc. (hereinafter referred to as the applicant) applied to the defendant Bridgeport Zoning Board of Appeals (hereinafter CT Page 598 referred to as the Board) for a special exception permit to build a car wash facility on its property at 2285-2293 Main Street in Bridgeport. The Board held two public hearings on the application, the first on May 14, 1996 and a second on June 11, 1996. The court finds the Board complied with the publication of legal notice for both hearings pursuant to § 8-7 of the Connecticut General Statutes. The record was returned to court in accordance with Connecticut General Statutes § 8-8 (i) and Connecticut Practice Book § 257 (a).
From the record, the following facts are not in dispute. The proposed site is located at the intersection of Main Street and Wheeler Avenue in Bridgeport. It has an area of 18, 689 square feet, of which 98 percent is in a Business 1 zone, and the remaining two percent, located to the rear of the property facing Wheeler Avenue, is in a Residence C zone. The surrounding properties on both sides of Main Street are occupied by numerous businesses and are in a Business 1 zone. There is a Walgreen Pharmacy across the street on Wheeler Avenue. The properties facing Main Street are commercial and the area is heavily traveled. The properties to the rear on Wheeler Avenue are in a Residence C zone and are occupied by multi family and apartment buildings. The proposed use will be entirely in the B-1 zone, and the applicant has agreed to landscape the portion in Residence C as a buffer for the adjoining Residence C zone properties.
The applicant is also the owner of the New Colony Diner that adjoins the proposed car wash site to the north. The proposed site is now being used for parking by patrons of the New Colony Diner. In the past, the site has been used as a gas station, a used car dealership, and an automobile repair business.
At the May 14, 1996 public hearing, the applicant's professional engineer, Mr. Gregory Pidludski, submitted and explained to the Board a proposed plot plan dated April 29, 1996, that focused primarily on the traffic flow. His expert on the equipment to be installed, a Mr. Downey, also explained the new technology and answered questions from the Board. The board expressed concerns with the number of automobiles that could be accommodated on site (referred to as stacking), the impact that automobiles waiting to enter the car wash facility would have on Wheeler Avenue and traffic congestion in this neighborhood. (See exhibit A, Return of Record of May 14, 1996.)
The Board also heard from those speakers in opposition who CT Page 599 were owners and employees of other car wash facilities in Bridgeport. At the close of this hearing, the Board voted to hold a second hearing on June 11, 1996, in order for the applicant to submit "additional information to address traffic and vehicle stacking and egress concerns." (See exhibit A, Return of Record May 14, 1996, p. 19.)
At the second public hearing, the applicant's engineer, Mr. Pidludski, submitted a revised plot plan dated June 6, 1996. In this revised plan, he explained and showed that fourteen automobiles would be stacked or accommodated on this site. He changed the original plan where automobiles would enter and exit from Wheeler Avenue to having a single entrance from Wheeler Avenue and a single exit onto Main Street to improve the traffic flow, as well as providing better drainage facilities to take the water off of these streets. (See exhibit A, Return of Record of June 14, 1996, public hearing, p. 3.) The Board again heard testimony of neighboring car wash owners opposed to the application. At this second hearing, the Board accepted a petition in opposition signed by eight property owners (hereinafter referred to as appellants) who had not appeared at the first hearing.
After the close of the second hearing, the Board unanimously approved the revised plan with the condition that all wash and rinse water shall be contained on site. The Board gave the following reason for its approval: "1. The use, as approved, will not cause any negative impacts as related to traffic noise, obnoxious fumes or the public safety." (See exhibit A, Return of Record of June 11, 1996 hearing, p. 10.)
At the court hearing held November 21, 1997, the parties stipulated that at least one of the appellants owned land adjoining or located within a radius of 100 feet of the land in question and is an aggrieved party and has standing to take this appeal. Section 8-8 (a) (1) Connecticut General Statutes.
The court begins its analysis by finding that this proposed use does not require a hardship variance under § 8-6 of the Connecticut General Statutes. This use comes within the special exception provisions of Chapter 11, Section 2 (s) (3) of the Bridgeport zoning regulations, which provides in relevant part as follows:
3. Motor vehicle repairing or servicing which shall CT Page 600 include but shall not be limited to the following operations on motor vehicles or motor vehicle parts, to wit: body or fender repairing or replacement, washing or steaming operations. . . ."
Under Chapter 21, Section 2 (b) of the zoning regulations, the Board is required, after holding a public hearing, to consider the following factors before it may grant a special permit or exception for a car wash facility:
 ". . . (a) the size and intensity of such use and its effect on the comprehensive plan of development for the City, (b) the capacity of adjacent and feeder streets to handle peak traffic loads and hazards created by the use, (c) the emission of noise, light, smoke, odor, gas, dust or vibration in noxious or offensive quantities, (d) the overall effect on tax valuation of neighborhood properties due to unusual topography of the location, the nature, location and height of buildings, walls, stocks, fences, grades and landscaping on the site, (e) the extent, nature and arrangement of parking facilities, entrances and exits, (f) fire and police hazards involved, (g) all other standards prescribed by these regulations for the use."
Under section 2 (b), the Board is also required "to make such findings and stipulations as are necessary to protect property values in the district as a whole and the public health, safety and welfare secured."
In the Supreme Court case of A.P. W. Holding Corporation v.Planning Zoning Board of Milford, 167 Conn. 182, 185 (1974) the Milford zoning regulations authorized the Zoning Board of Appeals to issue a special permit to construct an automatic truck wash provided that specified standards were met, similar to those required under Chapter 21 Section 2 (b) of the Bridgeport regulations. In that case, the court summarized the law on special exceptions. A special exception and a special permit have the same meaning and may be used interchangeably. It allows a property owner the use of the property which the zoning regulations permit. The conditions permitting the use are to be found in the regulations themselves. Mitchell Land Co. v.Planning Zoning Board of Appeals, 140 Conn. 527, 531-33 (1953);Service Realty Corporation v. Planning Zoning Board of AppealsCT Page 601of the Town of Greenwich, 141 Conn. 632, 636 (1954).
When considering an application for a special exception or special permit, the Board acts in an administrative capacity.Farina v. Zoning Board of Appeals, 157 Conn. 420, 422 (1969). A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. Acting in this administrative capacity, the Board's function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations are satisfied. A.P. W. HoldingCorporation v. Planning Zoning Board of Milford, 167 Conn. 182,185 (1974).
According to the record on file, the Board held the second hearing on June 11, 1996, for the applicant "to submit additional information to address traffic and vehicle stacking and express concerns." Immediately following this public hearing, the Board unanimously approved the revised plan and stated its reason in the record that the use "will not cause any negative impact as related to traffic, noise, obnoxious fumes, or the public safety." (See exhibit A, Return of Record, June 11, 1996 Hearing, p. 10.)
Chapter 21, Section 2 (b) requires the Board to consider the seven factors set forth (a) through (g) in the zoning regulations as follows:
 (a) The size and intensity of such use and its effect on the comprehensive plan of development for the city. (b) The capacity of adjacent and feeder streets to handle peak traffic loads and hazards created by the use. (c) The emission of noise, light, smoke, odor, gas, dust or vibration in noxious or offensive quantities. (d) The overall effect on tax valuation of neighborhood properties due to unusual topography of the location, the nature, location and height of buildings, walls, stacks, fences, grades and landscaping on the site. (e) The extent, nature and arrangement of parking facilities entrances and exits. (f) Fire and police hazards involved. (g) All other standards prescribed by these regulations for the use.
This special exception regulation also required the Board to "make findings and stipulations" as are necessary to protect CT Page 602 property values in the district as a whole and the public health, safety and welfare secured." The Board also failed "to make such findings and stipulations as are necessary to protect the property values in the district as a whole and the public health, safety, and welfare secured."
From the record, the court finds the Board considered only two of the seven factors, (c) and (e), set forth in the Bridgeport special exception regulation. There is nothing in the record to indicate that the Board considered the other five factors. Nowhere in the record was there any determination made that the application was deemed to be in the public interest.A.P.W. Holding Corporation, supra.
For the foregoing reasons, the appeal is sustained.
PETRONI, J.